412 A.2d 1363

**COMMONWEALTH of Pennsylvania**

v.

**James CROWSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 12, 1979.

Decided Dec. 21, 1979.

Petition for Reconsideration Denied April 29, 1980.

Allan M. Tabas, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Asst. Dist. Atty., Marianne Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

Appellant James Crowson was convicted by a jury of murder in the first degree arising out of the shooting death of Tommy Lee Lovett in Philadelphia on December 21, 1974. In this direct appeal, Crowson urges a number of points for our consideration.[1] After careful consideration we are satis-

---

1. In addition to the contention that the evidence was insufficient as a matter of law to support the conviction, which is discussed in the

fied that he is not entitled to the relief he seeks, with the exception of the modification of the sentence.

■ It is the responsibility of a reviewing court, in evaluating the sufficiency of the evidence to support the verdict of guilt, to view the testimony in a light most favorable to the Commonwealth, as verdict winner, to accept as true all evidence and all reasonable inferences upon which, if believed, the factfinder could have properly based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976); *Commonwealth v. Huntley*, 466 Pa. 375, 353 A.2d 402 (1976); *Commonwealth v. Boyd*, 463 Pa. 343, 344 A.2d 864 (1975); *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974).

The evidence adduced at trial established that the victim lived with his uncle, Leonard Cleveland, at 5630 Walnut Street in the City of Philadelphia. Mr. Cleveland was roused from sleep at approximately 6:30 a. m., December 21, 1974, by noises he described at trial as: "bang, oh; bang, oh; bang, bang, oh, oh." Following these sounds, Mr. Cleveland left his bed and listened at his closed bedroom door for further sounds. He testified that he heard footsteps travelling down the hallway of his apartment, from the front living room to the bathroom across the hall from his own bedroom; that he heard running water in the bathroom; that as the water was running, he heard knocking and shouts of "Police" at the apartment's side and rear doors; that the water was shut off and that he heard the person in

body of this opinion, appellant also claims that he is entitled to be discharged or awarded a new trial for the following alleged errors: violation of Criminal Procedure Rule 1100; violation of his right against double jeopardy; violation of Criminal Procedure Rule 130 and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); failure to suppress physical evidence seized at the scene of the murder and elsewhere pursuant to search warrants; admission into evidence of certain physical evidence; alleged inadequacies and errors in the charge to the jury; and objections to the voir dire and the selection of the jury panel. The complaints are without merit and have been adequately disposed of in the opinion of the learned trial judge.

the bathroom walk toward the living room and en route slide a metal instrument across the hallway floor towards the hallway closet. Mr. Cleveland, correctly surmising that the person had gone back into the front living room, then left his bedroom and opened the side entrance to the apartment letting police officers into the apartment. The officers found appellant in the front living room and immediately arrested him after finding the victim lying in another bedroom in the apartment bleeding profusely from several gunshot wounds.

A search of the apartment by the police netted a .22 calibre weapon on the floor of the hallway closet containing five spent cartridges and four live rounds. All of these cartridges were imprinted with a "D" on the rim. A ballistics expert testified that this mark identified the rounds as being manufactured by the Dominion Company of Canada. The police later found 16 identical live shells in appellant's apartment after a search pursuant to a search warrant. This type of ammunition with the "D" marking is unique to the Dominion Company and is not found in general circulation within the United States. Although fragments of bullets were removed from the victim's body and the wall of the murder scene, the fragments were so distorted that ballistics tests could not positively prove that they had been fired from the weapon found in the closet. There was no doubt that they had been fired from a .22 calibre weapon. Tests indicated that the weapon had been wiped clean of fingerprints. Mr. Cleveland testified that neither he nor his nephew owned the revolver and that he had never seen it before. Appellant denied that the weapon was his, but admitted that he had possessed the .22 calibre ammunition found in his apartment by police.

A post mortem examination of the victim established that he had died as the result of gunshot wounds to his left chest, piercing his lung; to his left cheek causing the bone to shatter; to the left side of the head, piercing the scalp; to the left side of the head, piercing the skull and the brain; and to the left ear flap. The medical examiner testified

that in his expert opinion the victim could not have died by accidental or suicidal means. Bloodstains were found on appellant's pants, although medical tests could not determine whether they were of the same type as that of the victim.

Appellant testified on his own behalf and stated that he had been invited by the victim to spend the night in the apartment where the victim lived with his uncle, Mr. Cleveland. He stated that he was a friend of the victim's and that he did not kill him. He testeified that he was not awakened by the shots but rather by the pounding on the door by the police. He contended that the bloodstains on his pants were caused when he bent down to look at the victim's body after his arrest, or alternatively, that he had been beaten by one of the arresting officers.

■ The evidence presented was sufficient for the jury to find appellant guilty of murder in the first degree. First, appellant admitted his presence at the scene of the crime. Second, the two doors to the apartment were bolted from the inside and the apartment building had been surrounded by police so that the killer was still inside the apartment when the police entered. Third, Mr. Cleveland's testimony indicated that there was only one other person in the apartment moving; that person being the appellant. Fourth, appellant possessed the same rare type of ammunition in his own apartment as was contained in the weapon found at the crime scene. The jury could properly have concluded from this evidence that appellant had killed the victim with malice aforethought.

■ There is no requirement that a homicide, including one of murder in the first degree, be proven by positive eyewitness testimony. Circumstantial evidence may be sufficient to prove any element, or all of the elements of a crime. *See Commonwealth v. Paquette*, 451 Pa. 250, 391 A.2d 837 (1973); *Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972); *Commonwealth v. Chester*, 410 Pa. 45, 188

A.2d 323 (1963). Although no single bit of evidence may conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt. *See Commonwealth v. Dawson,* 464 Pa. 254, 257, 346 A.2d 545, 547 (1975). ("While none of the foregoing facts taken singly would be sufficient to establish [appellant's] guilt, the totality thereof and the reasonable inferences arising therefrom were legally sufficient to render [appellant's] guilt an issue for the jury.")

■ Finally, the law in Pennsylvania is clear that the deliberate use of a deadly weapon upon a vital area of the body of the victim is sufficient to allow the jury to infer a specific intent to take life, absent any circumstances that might negate such an intention. *See, Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976) and cases cited therein; *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A.2d 608 (1950); *Commonwealth v. Drum,* 58 Pa. 9 (1868). After a careful review of the record in this case, it is clear to us that there is no merit in appellant's contention that the evidence was insufficient for a jury to have convicted him of first degree murder.

■ Appellant was sentenced to death by the jury following its determination that he was guilty of murder in the first degree. The death penalty statute under which appellant was sentenced, 18 Pa.C.S.A. §§ 1102, 1311 (Supp.1978–79), was declared unconstitutional by this Court in *Commonwealth v. Moody,* 476 Pa. 223, 382 A.2d 442 (1977), *cert. denied,* 438 U.S. 914, 98 S.Ct. 3143, 57 L.Ed.2d 1160 (1978). It is clear that a sentence of death may not be imposed under an unconstitutional death penalty statute, *Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (1978). At the time of this prosecution, the only valid penalty for murder of the first degree was life imprisonment, 18 Pa.C.S.A. § 1102. Accordingly, we vacate the judgment of sentence of death and impose a sentence of life imprisonment. *See, Common-*

*wealth v. Myers,* 481 Pa. 217, 392 A.2d 685 (1978); *Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978).[2]

Judgment of sentence of death vacated and sentence of life imprisonment imposed.

MANDERINO, J., did not participate in the consideration or decision in this case.

ROBERTS, J., concurs in the result.

---

2. Because of our decision in *Commonwealth v. Moody, supra,* we need not address appellant's numerous challenges to the death penalty statute and the manner in which it was applied to him.