413 A.2d 1031
**COMMONWEALTH of Pennsylvania**
v.
**Robert BISHOP, Appellant.**
Supreme Court of Pennsylvania.
Submitted Jan. 24, 1980.
Decided April 24, 1980.

---

Gerald A. Stein, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Victor Fortuno, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant was convicted by a jury of murder of the first degree for the shooting death of Valerio Montezuma which occurred on May 3, 1974. Post trial motions were denied and a sentence of life imprisonment was imposed. This appeal followed.[1]

Appellant has advanced six assignments of error. We have determined that none of the errors alleged requires the granting of a new trial and we affirm the judgment of sentence.

The Commonwealth's evidence established that on May 3, 1974, three young men entered Valerio Montezuma's grocery store, demanded money and ordered Mrs. Montezuma to come out from the rear of the store. When Mrs. Montezuma saw the men, she stepped in front of her husband, but he pushed her away, and thereafter one of the three men shot Mr. Montezuma twice, killing him. The post-mortem examination disclosed that the cause of death was gunshot wounds, one to the face and one to the chest.

Meanwhile, plainclothes police officers were patrolling the area and heard the shots. They saw two men run from the store and down the street. One of the officers left the car and pursued the men down the street. During the chase, one of the men turned and fired twice at the police officer. The police officer, in turn, fired five times at the fleeing

1. In February 1975 the appellant was tried before a jury for robbery, criminal conspiracy, a weapons offense, murder, voluntary and involuntary manslaughter. The jury returned a verdict of guilty of first degree murder only. The penalty was fixed at life imprisonment, but this Court, on appeal, set aside judgment of sentence and ordered a new trial. It is the alleged errors in the new trial which are the subject of this appeal.

gunman. The officer was unsure of whether he hit the gunman, but positively identified the appellant at trial as the gunman.

Although the gunman escaped, a homicide detective with the Philadelphia Police Department testified that he received anonymous information that the appellant had fled to Indianapolis, where he was staying with his brother. The detective requested Indianapolis police to arrest the appellant at his brother's address. On May 7, 1974 Indianapolis police arrested appellant at the home of his brother. When arrested, he had a bandaged left wrist. The Indianapolis police advised appellant of his *Miranda* rights, but did not take a statement or question him.

Philadelphia homicide detectives then flew to Indianapolis and took appellant into custody. They testified that appellant was not threatened, coerced or abused while in their custody, and upon arriving at police headquarters in Philadelphia, the appellant was again given his *Miranda* warnings, after which he voluntarily, intelligently and knowingly waived his rights and made a statement.

Appellant's inculpatory statement indicated that he and three other men planned to rob the Montezumas' store. Appellant entered the store armed with a handgun in the company of the other two men, demanded money from Mr. Montezuma, then shot Mr. Montezuma when Mr. Montezuma came toward him. Appellant and the others then ran from the store and, when he saw that he was being chased, fired at the person chasing him. As he ran, appellant was wounded in the left hand, was treated by his mother, and subsequently went to his brother's home in Indianapolis.

■ In his first assignment of error, appellant asserts that he is entitled to a new trial because of the admission of hearsay evidence that appellant had a gunshot wound of the hand and that he was a participant in the crime. He contends further that the court's subsequent instruction to the jury that such evidence was inadmissible and that it should not be considered in the formulation of a verdict, was

ineffective. We agree that the evidence was inadmissible and that the trial court's instructions to the jury may have been ineffective to protect appellant's Sixth Amendment right to confront the witnesses whose statements were used against him (see Mr. Justice Jackson's concurring opinion in *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed.2d 790, 799 (1948)); however, we do not agree that the admission of such evidence requires a new trial.

In *Commonwealth v. Story* this Court stated:

> Where a trial error violates the federal constitution, this Court, at a minimum, must employ the federal harmless error rule. See *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967). A federal constitutional error cannot be found harmless unless an appellate court is convinced beyond a reasonable doubt that the error was harmless.

Id., 476 Pa. 391, 405, 383 A.2d 155, 162 (1978).

We went on in *Story* to observe that "[a]n error, which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." 476 Pa. at 411, 383 A.2d at 165. In this case, the erroneously admitted evidence was substantially similar to properly admitted evidence that appellant was shot in the hand and that he was a participant in the crime. A police officer testified that appellant was the person who he saw run from the store where the shooting occurred and that he shot at appellant, possibly wounding him. Further, there was evidence that appellant was arrested four days after the shooting and that he had an injured hand. Finally, appellant's own statement given to police indicated that he was a principal participant in the crime and that he sustained a gunshot wound to his left hand while fleeing the scene of the crime. Admission of the hearsay evidence, in this instance, therefore, while it was error, was harmless error.

Appellant's next assignment of error is that the district attorney in his closing argument improperly referred to hearsay testimony to prove that appellant had fled and had

suffered a gunshot wound. The district attorney stated that a detective on the Philadelphia police force had "received information from the family". NT 11–30–77 at 98. The district attorney also restated the contents of a teletype message that the Philadelphia police department sent to the Indianapolis police department, requesting that the Indianapolis police attempt to locate appellant, who was thought to be at a certain address in Indianapolis and was thought to have a gunshot wound of the left hand. *Id.*

The Commonwealth argues that testimony to the effect that it received information from the family was not hearsay and that the statement about the teletype message was offered not for the truth of the fact asserted, but to respond to defense counsel's intimation that the Commonwealth wrongfully conspired to convict the defendant. The Commonwealth also argues that the content of the teletype message (the address at which defendant might be found, and the fact that he had sustained a gunshot wound to his left hand) was independently established at trial.

■ Wigmore on *Evidence* states that counsel's closing statement should consist of a restatement of evidence: "Any representation of fact . . . which is made by [counsel] in the argument must . . . be based solely upon those matters of fact of which evidence has already been introduced. . . ." VI § 1806 (Chadbourn rev. 1976). The record, independent of hearsay, establishes that there was communication between the police and appellant's family, that a communique was sent from the Philadelphia police department to the Indianapolis police department requesting the Indianapolis police to arrest appellant, that appellant was arrested at the address given in the communique, and that appellant had a gunshot wound in his left hand. All of the matters mentioned by the district attorney in his closing argument were *independently* established by competent testimony. Therefore, appellant's contention that the prosecutor's closing was improper is without foundation. See also *Commonwealth v. Graham*, 467 Pa. 417, 421, 358 A.2d 56, 58 (1976).

In his third assignment of error, appellant argues that the introduction of evidence that appellant was given *Miranda* warnings by the Indianapolis police was prejudicial in that it falsely conveyed to the jury that appellant had a statement to make. Appellant did not make any statement to Indianapolis police and the prosecutor did not ask the Indianapolis detective anything about a verbal interchange with the appellant which may have occurred subsequent to his giving the *Miranda* warnings. However, appellant did make a statement to Philadelphia police after he had been extradited to Pennsylvania.

The Commonwealth's position is that the Indianapolis warning was introduced to corroborate testimony that the statement ultimately given by appellant was voluntary. Appellant was warned more than once prior to the giving of his statement. Appellant argues, however, that if the Indianapolis warnings were used to corroborate the voluntariness of the Philadelphia statement, those warnings should have been the subject of appellant's suppression hearing prior to his first trial. Appellant argues that it was the Commonwealth's obligation to produce the Indianapolis detective at the suppression hearing "to subject him to an examination on the voluntariness of this particular waiver. . . ." NT 11–29–77 at 37.

It may be that if appellant had never made a statement to police, the admission into evidence of the Indianapolis *Miranda* warnings would have been an improper comment on appellant's constitutional right to remain silent. However, appellant did give a statement to Philadelphia police. Therefore, the Indianapolis warnings were properly admitted for the purpose of establishing that the statement was voluntary and was given only after proper and repeated warnings.

Appellant's argument that if the Indianapolis warnings were used to corroborate the voluntariness of the Philadelphia statement, they should have been the subject of appellant's suppression hearing prior to trial, is based on a misapprehension of what the Commonwealth is required to do at a

suppression hearing under Pa.R.Crim.P. Rule 323.[2] Rule 323, in pertinent part, provided:

> (d) The application [to suppress] shall state specifically the evidence sought to be suppressed, the specific constitutional grounds rendering the evidence inadmissible, and shall state with particularity the facts and events in support thereof.
>
> \*   \*   \*   \*   \*   \*
>
> (h) The Commonwealth shall have the burden of going forward with the evidence and of establishing the admissibility of the challenged evidence.  .   .   .
>
> \*   \*   \*   \*   \*   \*
>
> (j) If the court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility.

■ In this case, the suppression court determined that the appellant's statement was admissible. If the appellant had wished to claim that the statement was inadmissible, in part, because of the inadequacy of the Indianapolis warning, it was appellant's obligation, under Rule 323(d) to state the facts and events in support of this claim. Alternatively, under 323(j), appellant could have presented new evidence at trial in support of a renewed motion to suppress. In this case, appellant did not offer any new evidence that the confession was inadmissible. Even if the *Miranda* warnings given in Indianapolis were flawed, the suppression court held that the warnings given in Philadelphia immediately prior to the confession were adequate to support the admissibility of the confession. It is difficult to understand, therefore, within the context of Pa.R.Crim.P. Rule 323, how appellant would have been helped if he had been permitted to question the adequacy of the Indianapolis warnings at the

**2.** Appellant's suppression hearing was on June 18, 1974. The version of Pa.R.Crim.P. Rule 323 cited herein is that which was effective in 1974.

suppression hearing. Failure to grant a mistrial because of the reference to the Indianapolis warnings was not error.

■ Appellant next contends that the trial court erred in instructing the jury that it could infer both malice and specific intent to kill from the single act of using a deadly weapon on a vital part of a person's body. This Court has stated in *Commonwealth v. O'Searo:*

> Our cases have permitted the fact that an actor uses a dangerous weapon on a vital part of the body of another human being to justify a jury finding, 1) that the actor possessed the requisite malice required in common law murder . . . and 2) that the act was committed pursuant to a specific intent to kill.

466 Pa. 224, 236, 352 A.2d 30, 36 (1976). As the *O'Searo* court points out, " 'specific intent to kill' is a phrase that has been developed by the courts of this jurisdiction to express the state of mind which characterizes the intent which accompanies a killing which was willful, deliberate and premeditated, as required by the statute." *Id.,* 466 Pa. at 234, 352 A.2d at 35. There was no error in the trial court's instruction.

■ Appellant next argues that the trial court erred in overruling his demurrer to first degree murder because the Commonwealth failed to prove that appellant had the requisite specific intent to kill. In *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. * (1976), Justice Pomeroy noted that once, as here, the defendant offers evidence after his demurrer has been overruled, the propriety of the ruling on the demurrer is not available on appeal. Accordingly, we will treat this issue as one involving the refusal of the court below to grant defendant's motion in arrest of judgment. The testimony in this case established that the appellant entered the decedent's grocery store in company with two other persons. The appellant, armed with a firearm, pointed the weapon at the decedent and fired three times, striking the decedent in the head and chest. This Court recently stated in *Commonwealth v. Crowson:*

"[T]he law in Pennsylvania is clear that the deliberate use of a deadly weapon upon a vital area of the body of the victim is sufficient to allow the jury to infer a specific intent to [kill] . . . ."

488 Pa. 537 at 543, 412 A.2d 1363 at 1365 (1979). Slip op. at 5. Accord, *Commonwealth v. O'Searo, supra,* 466 Pa. at 236–238, 352 A.2d 30. We find no error here.

The appellant further argues that the Commonwealth has not introduced sufficient evidence to support a first degree murder charge. The Commonwealth used the circumstantial evidence that appellant used a deadly weapon on a vital part of decedent's body to establish inferentially that the elements of malice and specific intent to kill were present. Appellant argues that such circumstantial evidence was insufficient to raise the murder conviction from third to first degree. However, this Court specifically considered and rejected a similar argument in *O'Searo:*

This presumption [which permits the jury to find intent from the use of a deadly weapon on a vital part of the body] was developed in recognition of the impossibility for the Commonwealth to meet its burden of establishing a requisite frame of mind without resort to circumstantial proof. Because a state of mind by its very nature is subjective, absent a declaration by the actor himself we can only look to the conduct and the circumstances surrounding it to determine the mental state which occasioned it.

466 Pa. at 238, 352 A.2d at 37. (Footnote omitted). In this case, the Commonwealth proved that the appellant repeatedly fired a deadly weapon at vital areas of the decedent's body, killing him. Such evidence is enough to support a finding of specific intent to kill.[3]

---

3. Appellant suggests that since his statement was introduced and the statement "established that he did not intend to harm [his victim] and fired the gun only because he was 'scared' and 'nervous', it follows that the Commonwealth failed to meet its burden of proving specific intent . . ." However, the fact-finder was under no obligation to believe his self-serving allegation that he was "scared" and "nervous." It could believe any part (i. e., all, part or none) of

Appellant's final argument is that the trial court erred in allowing the Commonwealth to introduce into evidence references to the commission of a robbery by the appellant where appellant had been acquitted of robbery and conspiracy at his first trial and that such reference violated appellant's double jeopardy right. These references were made in appellant's statement to police, wherein appellant told police that the killing occurred incidental to a plan that he and others formulated to rob a neighborhood store. Appellant's argument is that since the jury found him not guilty of robbery at his first trial, the use of a statement which contains reference to the robbery constitutes a second trial for the same crime. Appellant contends on double jeopardy grounds that the jury at the second trial should not have been permitted to hear evidence that appellant had been a participant in a robbery of which a prior jury had acquitted him.

■ Appellant's claim that since he was acquitted of robbery at his first trial, the introduction of the statement containing references to the robbery violated his Fifth Amendment protection against double jeopardy, is without merit. At appellant's second trial, the trial which is the subject of this appeal, appellant was not tried on the charge of robbery. Consequently, he was not placed in jeopardy twice for the same crime. Accordingly, the evidence containing references to appellant's participation in a plan to rob the Montezumas' store was properly admitted.

For reasons given, we find all of the appellant's assignments of error without merit.

Judgments of sentence affirmed.

EAGEN, C. J., and ROBERTS, J., concur in the result.

the statement. *Commonwealth v. Duncan,* 473 Pa. 62, 68, 373 A.2d 1051, 1053 (1977); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975).