430 A.2d 1165

COMMONWEALTH of Pennsylvania, Appellee,

v.

John J. McANDREWS, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 20, 1981.

Decided July 2, 1981.

1. *Commonwealth v. Northington*, 466 Pa. 422, 353 A.2d 426 (1976).

2. Act of January 25, 1966, P.L. 1580, 19 P.S. § 1180–1 *et seq.* (Supp.1979).

Richard B. Moore (Court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Kenneth S. Gallant, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

After a jury trial, appellant, John J. McAndrews, was convicted of murder of the first degree [1] and possession of an instrument of crime [2] in connection with the fatal shooting of his girlfriend, twenty-three year old Jaimie Ulan, on October 31, 1977. Post-trial motions were denied, and appellant was sentenced to life imprisonment on the first degree murder conviction and to a concurrent term of two and one-half to five years imprisonment for possession of an instrument of crime. An appeal was taken directly to this Court from the judgment of sentence imposed for first degree murder.[3] We affirm.

### I

Appellant first contends that the evidence was insufficient to prove that he possessed the requisite specific intent to kill. We disagree.

In evaluating the sufficiency of the evidence, we must view the record in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom, upon which, if

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2502(a).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 907.

3. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586 No. 142, § 2, *as amended,* April 28, 1978, P.L. 202, No. 53 § 10(4). 42 Pa.C.S.A. § 722(1).

believed, the trier of fact could properly have based its verdict. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Helm*, 485 Pa. 315, 402 A.2d 500 (1979); *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975). Viewed in this light, the evidence established the following:

On the evening of October 31, 1977, appellant, who had been living intermittently with the victim and her three and one-half year old daughter, arrived at her apartment with a friend, Daniel Shillingford ("Shillingford"). Upon their arrival, appellant and the victim began arguing in the living room. The two then proceeded to the bedroom where the argument continued outside the hearing of Shillingford. Shortly thereafter, upon hearing a gunshot in the bedroom, Shillingford rushed in and observed the victim wounded and lying on the bed. Appellant and Shillingford then left the apartment. The following day, after appellant surrendered to police, he was arrested and charged with murder, possession of an instrument of crime, and possession of an offensive weapon.

■ At trial, the evidence conclusively established that appellant pressed the muzzle of a gun against the victim's cheek, pulled the trigger, and shot her through the head. The deputy medical examiner testified that it was evident from the nature of the wound and the powder burns on the skin of the victim that at the time the fatal shot was fired, the gun was being held with moderate to light pressure against her cheek. Furthermore, appellant himself took the stand and admitted pointing the gun at the victim's cheek, pulling the trigger, and shooting her.[4] This evidence alone was sufficient to support the jury's conclusion that appellant *intended* to kill the victim. We have held consistently that the specific intent necessary for a first degree murder

4. Though appellant claimed that he thought the gun was unloaded and that the shooting was accidental, the jury was free to disbelieve him. *Commonwealth v. Wright*, 458 Pa. 236, 328 A.2d 514 (1974) (the factfinder is free to believe all, part of, or none of defendant's exculpatory statements).

conviction may be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Bricker*, 458 Pa. 367, 326 A.2d 279 (1974); *Commonwealth v. Alston*, 458 Pa. 412, 317 A.2d 229 (1974); *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).[5]

## II

Appellant next maintains that since the actual murder weapon had been suppressed before trial as the tainted fruit of an involuntary confession, the trial court erroneously permitted the Commonwealth's ballistics expert to use a similar weapon for a graphic demonstration. We disagree.

■ During interrogation after his arrest, appellant revealed to police the whereabouts of the murder weapon which he had hidden immediately after the shooting. After a suppression hearing, however, it was determined that appellant's statement was constitutionally infirm. Consequently, the statement and the murder weapon recovered on the basis of information contained therein were suppressed. At trial, however, two witnesses, who had been identified without any reference to the tainted statement, testified without objection that, on the afternoon of the murder, appellant had showed them a snubnosed .38 caliber pistol with a two inch barrel and a pearl handle.[6] It was undisputed that the gun so described was the weapon used by appellant to shoot the victim. Relying on that description,

5. Appellant also urges that since the shooting occurred only minutes after the commencement of the argument, there was insufficient time for him to form the requisite intent. Because the law requires no specific length of time to formulate the intention to kill, we find this claim totally without merit. *See Commonwealth v. Wright, supra; Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963).

6. Appellant does not challenge the admissibility of the testimony describing the weapon, which was based solely on the personal observations of the two witnesses and was totally unrelated to the suppressed statement. *See Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978); *Commonwealth v. Johnson*, 440 Pa. 229, 270 A.2d 389 (1970).

the Commonwealth secured a similar weapon and, over defense counsel's objection, the Commonwealth's ballistics expert used it to demonstrate to the jury that considerable pressure must be exerted to pull the trigger, thereby rebutting any argument of accidental discharge. Appellant challenges the expert's use of the replica as an attempt by the Commonwealth to circumvent the findings of the suppression court. We disagree. The Commonwealth introduced without objection a description of the murder weapon obtained from an untainted source independent of the suppressed evidence, and then used the replica, only after making it clear to the jury that it was not the murder weapon, *solely* to illustrate the ballistic expert's relevant technical testimony.[7]

Accordingly, we conclude that the trial court's ruling permitting the replica to be used for the purpose of a graphic demonstration was not error.

### III

■ Finally, appellant claims that the trial court should have declared a mistrial when informed by a court officer,

---

7. The record clearly reflects that the replica was used for illustrative purposes only:

Commonwealth: . . . I show you what has been marked Commonwealth Exhibit No. 33, and I ask you if you recognize it?
Expert: Yes, I do. . . . It is stainless steel, caliber .38 special with a two inch barrel. . .
Commonwealth: [F]or what purpose did you bring that item with you to the Courtroom today?
Expert: As a graphic demonstration. . .
Commonwealth: And does that particular item, other than for a graphic demonstration have any relationship to this case?
Expert: No.

Similarly, we reject appellant's claim that the use of the replica was inflammatory. The likelihood of inflaming the jurors was slim, particularly, in light of appellant's admission that he had shot the victim and the clear communication to the jury that the replica was not the murder weapon. On the other hand, the replica was a valuable evidentiary tool, utilized to facilitate the jury's understanding of expert testimony. *See Commonwealth v. Martinez,* 475 Pa. 331, 380 A.2d 747 (1977) (In determining the potential inflammatory nature of demonstrative evidence, the inflammatory nature of the evidence must be weighed against its "essential evidentiary value.")

while the jury was still deliberating, that one of the jurors did not want to go to a hotel for a second night of sequestration. Appellant failed to make a timely request for a mistrial, and this claim, accordingly, has been waived. *See Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). In any event, appellant's contention that the jury's verdict was coerced is totally without merit.

■ After six days of testimony, the jury retired on Tuesday April 11, 1978, and deliberated that day for approximately five hours. After spending the night in a hotel, deliberations began at 9:30 a.m. the following morning and were interrupted by a brief lunch and two requests for additional instructions. At approximately 8:30 p.m. that evening, the trial judge told a court officer to inform the jury that it should end deliberations for the day and go to a hotel for dinner and rest. As the trial judge was preparing to leave, however, the court officer returned and informed her that one of the female jurors refused to go to the hotel and was threatening to go home. The trial judge thereupon summoned the assistant district attorney and defense counsel, explained what had transpired, and advised them that she intended to admonish the recalcitrant juror on the record. While a court reporter was being secured for that purpose, however, the jury reached a verdict. After the verdict was announced without objection at 10:05 p.m., the jurors were polled at the request of defense counsel, and it was determined that the verdict was unanimous. Appellant has produced no evidence which even remotely suggests that the unanimous verdict was coerced. *See United States v. Grosso*, 358 F.2d 154 (3rd Cir. 1966), *reversed on other grounds*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

Accordingly, the judgment of sentence is affirmed.