544 A.2d 462

**COMMONWEALTH of Pennsylvania**

v.

**Patricia Ann CARBONE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1987.

Filed June 15, 1988.

Kevin J. Rozich, Johnstown, for appellant.

David J. Flower, Assistant District Attorney, Somerset, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, OLSZEWSKI, DEL SOLE, KELLY, POPOVICH and JOHNSON, JJ.

CIRILLO, President Judge:

Patricia Carbone appeals from a judgment of sentence entered in the Court of Common Pleas, Somerset County, following her conviction for first-degree murder. We reverse and remand.

Carbone raises several issues regarding the sufficiency of the evidence. She claims the Commonwealth failed to prove malice beyond a reasonable doubt and failed to disprove self-defense beyond a reasonable doubt. Therefore, she maintains that the evidence was insufficient to support a conviction for murder in the first degree. Carbone also claims that the presence of the decedent's widow at the prosecution table throughout voir dire and trial was inherently prejudicial.

The well-established standard for reviewing a sufficiency claim on appeal from a conviction was recently stated by our supreme court:

> [W]hether, viewing the evidence in the light most favorable to the Commonwealth [as verdict winner], and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered.... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986) (quoting *Commonwealth v. Harper*, 485

Pa. 572, 576–577, 403 A.2d 536, 538–539 (1979) (citations omitted)).

With these principles in mind, we commence our review of the evidence. Patricia Carbone, age thirty-one, was charged with first-degree murder, third-degree murder, and voluntary manslaughter. She admitted stabbing the decedent, Jerome Lint, but claimed self-defense. According to her testimony, Carbone was walking alone along Route 56 near Windber on Saturday evening, June 9, 1984. She had some free time before her boyfriend was to call so she decided to visit some friends who lived one-fourth mile away. She walked because she had no title for her car. Carbone stated that a small car going her direction slowed down, pulled in front of her and stopped. The car lights went off and the passenger door opened. Carbone walked toward the car. Thinking she would be offered a ride, she bent over and looked into the open door to acknowledge the person and decline the offer, which she did. The driver of the car told her "a nice-looking girl shouldn't be out walking." She continued walking and heard the car door shut. The man then pulled his car in front of her and again opened the car door. Thinking there was no danger, she leaned down again looking into the door intending to tell him that she did not need a ride when he "yanked hold of my hair," and pulled her onto the seat, half in and half out of the car. She experienced both terror and shock, and feared being dragged along the road. She begged him to let her go. As the car began drifting she pulled her legs off the ground and closed the door. When the door closed, he let go of her hair. She tried to talk to him, to "reach him on a human level ... to get through to him and get him to change his mind and let me go." When he stopped in a remote and heavily wooded area, she got out of the car and ran. Lint chased her and she lost one of her shoes. While she was running, she reached into her purse for a utility knife. She pulled out her hairbrush by mistake and dropped it. She then pulled out the knife. Lint tackled her and she stabbed him because she feared he would rape and possibly kill her. Her testimony indicated that she stabbed

the victim more than one time because he refused to stop his assault. When he ceased his attempts, he stood up. Carbone then saw headlights and ran toward them.

The Commonwealth's witness, Mr. Varner, testified that while he was driving with his family they were flagged down by a woman standing in the middle of the road with a knife in one hand and a purse in the other, "screaming over and over 'He's going to kill me, help me, let me in the car please.'" When Mr. Varner told her he would not let her in the car because of the knife, she "stabilized" and he allowed her to ride on the hood of his car. He dropped her off at the nearest house, which belonged to Mr. and Mrs. Boyer.

Mr. and Mrs. Boyer also testified for the Commonwealth. Mr. Boyer testified that while he and his wife were on the front porch, Carbone came running from around the back of the house. He asked what was wrong, and she replied that she had punched her boyfriend in the nose. Carbone testified that she did not want to tell the Boyers the truth for fear they would abandon her, as the Varners had. Mr. Boyer stated that Carbone was not screaming or crying when she approached the porch, but appeared frightened. Mrs. Boyer testified that Carbone was upset and badly shaken. Mrs. Boyer invited Carbone in the house and noticed that she was wearing only one shoe. She took Carbone to the bathroom to rinse the blood from her blouse and skirt. She asked Carbone if she wanted to call a friend or the police, but she replied that she just wanted to go home to Windber. Mrs. Boyer offered to take her home. When they got in the car, Carbone asked to return to the scene for her shoe. When they arrived, Carbone stared at Lint's car parked in the distance and said, "He must be looking for me." Frightened, Mrs. Boyer quickly turned her car around and left the scene.

Mr. Nadonely, Carbone's boyfriend, also testified on behalf of the Commonwealth. He testified that Carbone seemed nervous and uncomfortable when he talked to her on the telephone. He arrived at Carbone's apartment at approximately 11:30 p.m. that night and they went to a bar

about fourteen miles away. Nadonely stated that while they were there, Carbone left the table several times for the bathroom and later told him she had been vomiting. Carbone was pale and her face was swollen. Nadonely took her home at her request. She told Nadonely that someone had tried to rape her and she stabbed him. Carbone was "really upset" so he did not press her for a detailed explanation. He told her that she should call the police, but as far as he knew she had not done so. The next day, Carbone accompanied him to a motorcycle charity event. On their way, Carbone asked Nadonely to stop at the scene so she could retrieve her lost shoe and hairbrush. They saw Lint's parked car and Carbone expressed surprise that it was still there. They got out of their car, leaving the doors open "because we [were] afraid, you know, he might be coming back for the car or something." They found Carbone's hairbrush about forty yards from Lint's car. Carbone showed her boyfriend where the man had knocked her down in the weeds, which were "all knocked over and busted up." They did not see her shoe and did not go close to the car or see anything in it. They left and Nadonely again told her that she should call the police, but he did not want to "push her," and that "maybe she should come over and stay at my house so this guy don't come after her, you know, her and Amy [Carbone's daughter], to protect them." Nadonely further testified that Carbone told him she stabbed the man because "he wouldn't let her alone ... just kept coming after her. She tried to get away." Nadonely also stated that on Monday there were bruises on Carbone's thighs and buttocks.

Mrs. Stiles, a friend of Carbone's, also testified for the Commonwealth. She stated that she spoke with Carbone on Sunday at the motorcycle event, and that Carbone told her somebody had tried to rape her and she stabbed him in the arm, that he did not stop, so she stabbed him again with a knife from her kitchen which she had with her because she was walking alone and felt insecure.

Mrs. Marcinko, Carbone's neighbor, also testified for the Commonwealth. Mrs. Marcinko cared for Carbone's daughter on Saturday. Carbone came for her daughter on Sunday, and they talked. The witness testified that Carbone appeared calm and said she would like to tell her something and "not to say anything, that she had stabbed someone the night before and she thought she had killed him" and asked what she should do about it. The witness really did not believe her, but told her to call the police. The witness also stated that Carbone told her the man had "forced her into the car and tried to rape her, that's why she stabbed him."

State Police Officer Goldstrom also testified for the Commonwealth. He arrived at the scene on Monday at 8:40 p.m. when it was still daylight. He observed Mr. Lint's body in the car, which was in the driver's seat slumped toward the passenger seat. He found a woman's white canvas shoe two to three feet from the right rear bumper of the car, and a few drops of blood outside the driver's door of the car "as if someone had been standing there and they dropped." Officer Goldstrom also stated that there were smudges of blood on the inside of the driver's door and that the body had a puncture wound just behind and under the left arm but no other wounds were then noticed.

Police Officer Marshall testified on behalf of the Commonwealth. His testimony generally confirmed that of Officer Goldstrom, but added that he gathered eight stones from the scene found near the driver's door on the ground that appeared to have human blood on them.

Dr. Williams, a pathologist, also testified for the Commonwealth. He testified that he had performed the autopsy and that the decedent had stab wounds on his trunk and abdomen, and other wounds which were essentially superficial. The specific cause of death was a wound to the heart. He stated that in his opinion very few persons have any period of physical activity after such a wound to the heart. Dr. Williams stated that the decedent was 5'9" tall and weighed 165 pounds, and that the body was well-developed and well-nourished with adequate musculature. On cross-

examination, Dr. Williams testified that the opening and closing of a car door does not require enormous energy and is not an absolute impossibility with such a wound; that a person with such a wound could be capable of some activity but it is uncertain as to what that activity could be.

Officer Goldstrom, recalled, testified that he interviewed Carbone at her parents' home on Tuesday, June 12. She agreed to answer questions without counsel. Officer Goldstrom subsequently placed Patricia Carbone under arrest for criminal homicide.

Lint's brother and brother-in-law also testified on behalf of the Commonwealth. They indicated that they found Lint's body in a sitting position in his car. There was blood on the driver's door and on the ground outside the driver's side of the car. They also testified that they went to the remote area because he was known to have frequented the spot before.

The decedent's wife, Mrs. Lint, also testified for the Commonwealth. She stated that the spot where her husband's body was found was one of his favorite stopping points.

The Commonwealth's evidence also indicated that Patricia Carbone and Jerome Lint did not know each other. Following trial, the jury convicted Patricia Carbone of first-degree murder.

■ After a careful review of the entire trial record, we conclude that the Commonwealth failed to meet its burden of proving every element of first-degree murder beyond a reasonable doubt. First-degree murder is statutorily defined as an "intentional killing." 18 Pa.C.S. § 2502(a).[1] An

---

1. The Act of 1682 was the first great reform statute under William Penn which abolished the death penalty for all offenses except murder and retained the death penalty only for those persons who shall "wilfully or premeditatedly kill another person." The words "wilfully or premeditatedly" were substituted for the words "malice aforethought" and operated to retain the death penalty only for murder where there was express malice—the intent-to-kill variety—and not for murder where there was implied malice—some murderous intent less than the intent to kill. Though this early reform statute lapsed in

"intentional killing" is defined as follows: "Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). A willful, deliberate, and premeditated killing is one where the actor had the specific intent to bring about the death of the victim. *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980); *Commonwealth v. Moore*, 473 Pa. 169, 373 A.2d 1101 (1977).

Appellant Carbone claims self-defense. Thus, in addition to proving an intentional killing beyond a reasonable doubt, the Commonwealth must also show beyond a reasonable doubt that the killing was not in self-defense. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 552, 388 A.2d 1068, 1069 *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978).

Carbone raises two distinct questions. First, she claims the Commonwealth failed to prove malice, a necessary element of first-degree murder, beyond a reasonable doubt. Second, she claims the Commonwealth failed to disprove self-defense beyond a reasonable doubt. Although we cannot find that the evidence establishes a justifiable killing as

1718, its ameliorating influence resurfaced seventy-six years later in the Act of 1794. At that time, the third adjective,—"deliberate"—was added. The word "deliberate" came from the memoir of Justice Bradford who, in 1792, prepared for the Governor the research papers and the recommendation which formed the basis of the Act of 1794. The Act of 1794 stated:

> That all murder, which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree.

This was the first American statute to divide murder into degrees, leaving capital punishment intact as the appropriate sentence for murder in the first degree but providing for a lesser sentence for murder in the second degree (now murder in the third degree). Felony-murder, once murder in the first degree, is now second-degree murder. *See* 18 Pa.C.S. § 2502(c); *see also* Brenner, *The Impulsive Murder and the Degree Device*, 22 Fordham L.Rev. 274 (1953); Keedy, *History of the Pennsylvania Statute Creating Degrees of Murder*, 97 U.Pa.L.Rev. 759 (1949).

a matter of law, we are convinced that a malicious killing was not established.

In order for a willful or intentional killing to constitute murder, the Commonwealth must establish malice beyond a reasonable doubt. *Commonwealth v. Thomas*, 403 Pa. 553, 555, 170 A.2d 112, 113 (1961); *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632 (1938). The traditional definition of malice was set forth in *Commonwealth v. Drum*, 58 Pa. 9 (1868) [2]:

> Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Id.* at 15; *see also Commonwealth v. Kersten*, 333 Pa.Super. 343, 482 A.2d 600 (1984) (malice which may be inferred from attending circumstances in a homicide prosecution consists either of an express intent to kill or inflict great bodily harm, or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm). The classic jury charge in *Drum* makes it preeminently clear that malice, whether express or implied, must be proven by the Commonwealth, and that it may be proven circumstantially:

2. *Commonwealth v. Drum*, 58 Pa. 9 (1868) is a somewhat unorthodox and interesting source, as it is not an appellate opinion. A circuit judge in Western Pennsylvania disqualified himself because of his relationship with the defendant. Justice Agnew, an associate justice of the Supreme Court of Pennsylvania, was specially designated to preside at the murder trial. The report in this case consists largely of his charge to the jury. Because of the important legal principles in the charge, the case was, with his approbation, inserted in the official Supreme Court Reports. This 120 year-old *nisi prius* jury charge in Westmoreland County, in addition to being the wellspring for defining first-degree murder in Pennsylvania, is the leading oracle of the law in this regard nationwide. *See* Perkins, *Criminal Law,* (2d ed. 1969), p. 89 n. 20. *See generally* Annotation, *Modern Status of the Rules Requiring Malice "Aforethought," "Deliberation," or "Premeditation," as Elements of Murder in the First Degree,* 18 A.L.R. 4th 961 (1982).

The proof of the intention to kill, and of the disposition of mind constituting murder in the first degree, under the Act of Assembly, lies on the Commonwealth. But this proof need not be express or positive. It may be inferred from the circumstances. If, from all the facts attending the killing, the jury can fully, reasonably, and satisfactorily infer the existence of the intention to kill, and the malice of heart with which it was done, they will be warranted in so doing. He who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon.... must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act. He who so uses a deadly weapon without a sufficient cause of provocation, must be presumed to do it wickedly, or from a bad heart. Therefore, he who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without sufficient reason or cause of extenuation, is guilty of murder in the first degree.

*Drum,* 58 Pa. at 16; *see also Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Buzard,* 365 Pa. 511, 76 A.2d 394 (1950).

Thus it is well settled that the intentional use of a deadly weapon on a vital part of the body raises a permissible inference of malice. *Hinchcliffe,* 479 Pa. at 554, 388 A.2d at 1070. This inference has a dual purpose; it allows a jury to infer malice, *Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d 864 (1975), as well as a specific intent to kill, *Commonwealth v. Toledo,* 365 Pa.Super. 224, 529 A.2d 480 (1987); *Commonwealth v. Crowson,* 488 Pa. 537, 412 A.2d 1363 (1979).

The finder of fact is not required to ignore this inference merely because the defendant testifies that he did not

intend to take a person's life. *Commonwealth v. Gidaro*, 363 Pa. 472, 70 A.2d 359 (1950); *see also Commonwealth v. Martinez*, 499 Pa. 417, 453 A.2d 940 (1982); *Commonwealth v. D'Ambro*, 500 Pa. 303, 308 n. 5, 456 A.2d 140, 143 n. 5 (1983); *Commonwealth v. Roberts*, 496 Pa. 428, 437 A.2d 948 (1981). Here, the Commonwealth relies on that inference of malice to justify the verdict. The jury was not required to disregard the inference merely because Carbone testified otherwise. However, the Commonwealth's reliance on the inference from the fact of the stabbing is misplaced under the facts of this case.

It is not disputed that Carbone stabbed Lint and caused his death. The question raised is whether the act was inspired by malice. In this case, the inference of malice that would normally arise from the use of a deadly weapon upon a vital part of the body of the deceased, absent further explanation, is negated by other evidence presented in this case by the Commonwealth. *Commonwealth v. Caye*, 465 Pa. at 101, 348 A.2d at 137 (1975).

The Commonwealth's evidence showed that Carbone and Lint did not know each other; that Lint was driving and Carbone was on foot; that Lint was familiar with the remote area where his body was found, and, in fact, that it was one of his favorite stopping points; that immediately after the incident Carbone flagged down a car, seeking help and screaming that someone was going to kill her; that, following the incident, Carbone told numerous people that she stabbed a man because he tried to rape her.

An inference of malice cannot be accepted in a vacuum. The law infers or presumes from the use of a deadly weapon, in the absence of circumstances of explanation or mitigation, the existence of the mental element—intent, malice, design, premeditation, or whatever term may be used to express it—which is essential to culpable homicide. *See Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947). *See generally* 40 Am.Jur.2d *Homicide* § 265 (1968). It is necessary to look at *all* of the Commonwealth's evidence. In addition, the entire trial record must be evaluat-

ed, and all evidence actually received must be considered. *Griscavage, supra; see also Commonwealth v. McGuire,* 487 Pa. 208, 409 A.2d 313 (1979) (evidence, which negated inference of malice that would normally arise from defendant's use of deadly weapon on vital part of body of victim, was insufficient to establish malicious killing beyond a reasonable doubt and thus did not support third-degree murder conviction); *Commonwealth v. Heatherington,* 477 Pa. 562, 385 A.2d 338 (1978) (in a prosecution for murder, evidence of provocation or self-defense tends to negate the malice required to prove murder); *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947) (absence of motive is evidence tending to disprove specific intent).

 Carbone's claim of self-defense placed upon the Commonwealth the burden to prove beyond a reasonable doubt defendant did not act in self-defense. To raise the homicide to the level of murder it is necessary to establish that the defendant intentionally did the act which resulted in the death and that she did so without justification or excuse. It is important to note that the concept of malice is inconsistent with self-defense. In order to meet its burden of proof on the element of malice in a murder prosecution, the Commonwealth must exclude self-defense beyond a reasonable doubt. *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 552, 388 A.2d 1068, 1069, *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). The existence of self-defense, or otherwise stated, the state's failure to prove the absence of self-defense beyond a reasonable doubt, precludes the jury from fully, reasonably and satisfactorily inferring the existence of malice. *Drum,* 58 Pa. at 16.

 In its opinion, the trial court systematically discounts the probative value of each item of the Commonwealth's evidence tending to establish the absence of self-defense. The trial court plainly stated: "While we are satisfied that the foregoing items of evidence are *insufficient to disprove self-defense,* to them we must add the facts that defendant caused the death by intentional use of a deadly weapon on a vital part of decedent's body, which complicates the equa-

tion and goes to the heart of the defense attack on the sufficiency of the evidence." (emphasis added). Although the trial court believed that the Commonwealth had failed to disprove Carbone's claim of self-defense beyond a reasonable doubt, it concluded that the common law inference of malice raised the evidence to a level sufficient to disprove self-defense. The trial court relied on *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978). After a thorough review of the record, we agree with the trial court's conclusion that the Commonwealth did not disprove self-defense beyond a reasonable doubt; however, we find no basis for the court's finding that the inference of malice raised the evidence rebutting self-defense to the level of "beyond a reasonable doubt." The Commonwealth's reliance on *Hinchcliffe* is misplaced under the facts of this case.

In that case, the defendant, Hinchcliffe, and Ross, the victim, were involved in selling drugs. Hinchcliffe wanted to terminate the illicit business relationship, and an argument ensued. Ross grabbed a short length of pipe and attempted to hit Hinchcliffe. Hinchcliffe was able to get the pipe out of Ross's hand. Ross then grabbed a lamp and started to attack Hinchcliffe. Hinchcliffe diverted the lamp with the piece of pipe, and simultaneously struck Ross on the head. Ross fell to the floor and died a short time later. Hinchcliffe admitted planning to surreptitiously dispose of Ross's body, claiming he did not think the police would believe him because he had a previous criminal record and because he was in violation of parole for having left the state of Ohio without permission.

Following a jury trial, Hinchcliffe was convicted of third-degree murder. On appeal, he argued that the evidence was insufficient to sustain a third-degree murder conviction and the Commonwealth failed to meet its burden of disproving self-defense beyond a reasonable doubt. The Pennsylvania Supreme Court disagreed, noting that the factfinder can draw a permissible inference of malice from the intentional use of a deadly weapon on a vital part of the victim's

body. The court stated that "[s]ince there was evidence from which a jury could at least reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that Hinchcliffe did not act in self-defense." *Id.*, 479 Pa. at 557, 388 A.2d at 1071. Thus, the evidence in that case was sufficient as a matter of law to sustain the verdict.

Under the facts and circumstances of the case before us, the inference of malice is not warranted. In *Hinchcliffe*, as in almost every other case where malice has been inferred from the use of a deadly weapon upon a vital part of the body, *other circumstances* corroborated such malice and a jury could reasonably infer malice. *See, e.g., Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981) (after four hours of searching for victim, whom defendant knew, defendant approached victim with shotgun and from distance of five feet away shot him in back); *Commonwealth v. McAndrews*, 494 Pa. 157, 430 A.2d 1165 (1981) (defendant pressed muzzle of gun against victim's cheek and pulled trigger; victim was paramour of defendant; defendant fled); *Commonwealth v. Green*, 493 Pa. 409, 426 A.2d 614 (1981) (wife inflicted multiple stab wounds on husband whom she suspected of being unfaithful); *Commonwealth v. Bishop*, 489 Pa. 96, 413 A.2d 1031 (1980) (defendant entered victim's grocery store with firearm, pointed gun at victim and fired three times); *Commonwealth v. Bricker*, 458 Pa. 367, 326 A.2d 279 (1974) (defendant shot victim twice from two feet away, pushed victim from car and dragged body two hundred feet before it became dislodged); *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947) (defendant initiated altercation with his ex-girlfriend's current boyfriend, Hall; expressed desire to resume relationship with ex-girlfriend; admitted jealousy of her affection for Hall; and struck Hall and his ex-girlfriend with an iron bar across their heads); *Commonwealth v. Harvey*, 345 Pa.Super. 237, 498 A.2d 378 (1985) (defendant initiated struggle with the victim, his girlfriend, and strangled her with a purse strap; the struggle was witnessed by the woman's son).

■ The case before us, strikingly dissimilar from the aforementioned, presents no such corroborating circumstances. The evidence in this case simply does not warrant an inference of malice, and therefore a verdict of any degree of murder is precluded. However, a verdict of voluntary manslaughter could have been sustained on the record before us. *See* 18 Pa.C.S. § 2503.

Where there is a claim of self-defense, the Commonwealth must establish *one* of the following elements beyond a reasonable doubt:

(1) that appellant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that appellant used more force than was reasonably necessary to save himself from death, great bodily harm, or the commission of a felony;

(2) that appellant provoked the use of force; or,

(3) that appellant had a duty to retreat and that retreat was possible with complete safety.

18 Pa.C.S. § 505(b)(2); *see also Commonwealth v. Helm*, 485 Pa. 315, 402 A.2d 500 (1979); *Commonwealth v. Zenyuh*, 307 Pa.Super. 253, 453 A.2d 338 (1982).

Based on the evidence presented, there appear to be only two plausible bases for rejecting Carbone's claim of self-defense. First, it is conceivable that the jury may have concluded that Carbone's belief that she was in danger of death, serious bodily injury, or rape was an unreasonable belief.[3] If this was the basis for the conviction, the appropriate verdict would have been voluntary manslaughter. *Caye, supra; Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974). Second, the jury may have found that although Carbone may have reasonably believed she was

---

3. 18 Pa.C.S. § 505 provides that "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.... The use of deadly force is not justifiable under this section *unless* the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or *sexual intercourse compelled by force or threat.*" 18 Pa.C.S. § 505(a), (b). (emphasis added).

about to be raped or killed, she nevertheless used excessive force by failing to warn Lint that she would use the knife. Here again, such a conclusion would have justified only a finding of voluntary manslaughter. *Caye, supra; Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974).

■ Based on the facts of record, a jury could possibly conclude that the killing was justifiable. However, the issues of whether Carbone's belief was unreasonable and whether the force she used was excessive are questions for the factfinder.

Reversed and remanded for a new trial on the charge of voluntary manslaughter.[4]

KELLY, J., files a dissenting opinion in which CAVANAUGH, J., joins.

ROWLEY, J., files a dissenting statement in which DEL SOLE, J., joins.

KELLY, Judge, dissenting:

I respectfully dissent. I would find the evidence sufficient to sustain appellant's conviction of murder in the first degree. However, I would find that the presence of the decedent's widow at the counsel table of the Commonwealth requires a new trial. I state my reasoning briefly as follows.

## I.

The majority concludes that a verdict of guilt to a charge of murder in the first degree may not be based *solely* upon the presumption which arises from the use of deadly force on a vital organ when a defendant asserts a claim of self-defense. I would not reach that issue, as I do not find it presented by the facts of the instant case. Succinctly, I find that the *totality* of the evidence was sufficient to

4. It would be inappropriate for this court to enter a verdict of voluntary manslaughter. Our supreme court has previously indicated an unwillingness to usurp a jury's function by entering a verdict for a lesser degree of homicide after a determination that the evidence did not sustain the degree found by the factfinder. *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979).

sustain the verdict, and that the majority has failed to review the evidence in the light most favorable to *the Commonwealth* and give *the Commonwealth* the benefit of reasonable inferences arising from the evidence.

Appellant admitted stabbing the decedent with an 11–inch knife which she was carrying in her purse, but claimed that she did so in self-defense when the decedent attempted to abduct and sexually assault her. However, the details of appellant's trial version of the incident were inconsistent with the details of various prior statements made by appellant, with physical evidence discovered at the scene, with the probable (but not certain) effect of the wounds inflicted on the decedent, and with the considerable opinion evidence presented as to the decedent's reputation as a non-violent, law abiding, and happily married young man. Evidence also indicated that appellant had twice returned to the scene of the crime to remove evidence linking her to the crime, had otherwise acted in a calm, ordinary manner on the day following the incident, and had failed to report the incident to the police.

In its instructions to the jury, the trial court correctly explained:

> When the actor uses a deadly weapon on the vital part of the body of another, you may regard that as an item of circumstantial evidence from which you may infer that the actor had the specific intention to kill required in first-degree murder. Notice I said 'you may.' You don't have to. You may think it doesn't show an intention to kill when you wrap it up and consider it with all of the circumstances in the case.

> The Commonwealth contends that the evidence here supports a finding of malice-of intentional malice-as is required in first-degree murder, that there is no mitigation, there is no justification; and the defense contends that the evidence does not warrant a finding of such malice because the defendant was lawfully justified in acting in self-defense.

(N.T. 4/4/85 at 10). Thus, the jury was specifically instructed to consider "all the circumstances of the case"

before deciding whether appellant acted with "malice" and was not invited to find malice based solely upon the use of a deadly weapon on a vital organ.

The jury was free to believe all, part, or none of the evidence presented and to draw reasonable inferences arising therefrom. Apparently, the jury accepted appellant's admission that she stabbed the victim and rejected as not credible her proffered justification that he was attempting to abduct and sexually assault her. I would not substitute our assessment of the appellant's credibility and the weight to be accorded the evidence for that of the jury. Rather, I find the evidence sufficient to sustain the verdict, and therefore dissent.

## II.

The majority does not reach appellant's contention that a new trial is required as the result of the prejudice to appellant arising from the conspicuous presence of the decedent's widow at the prosecutor's table within the bar of the court during *voir dire* and throughout trial. Initially, I would find that a challenge to her presence was properly preserved, and that repetition of the objection at each stage of the proceedings was not required. *Cf. Commonwealth v. Hanes*, 361 Pa.Super. 357, 365, 522 A.2d 622, 626 (1987) (evidentiary ruling by trial court foreclosed further inquiry on the subject, repetition of motion was not necessary to preserve the issue). I find that a substantial risk of improper prejudice affecting juror deliberations was created by the emotionally evocative presence of the widow *within the bar of the court during voir dire and throughout trial.* No legitimate reason for her presence has been proffered, nor could I imagine any. Consequently, I would vacate the sentence and remand for a new trial on *all* charges.

ROWLEY, Judge, dissenting:

I respectfully dissent for the reasons set forth in Part I of the Dissenting Opinion of Judge Kelly concerning the sufficiency of the evidence.

However, I also disagree with Part II of Judge Kelly's Dissenting Opinion in which he concludes that the presence of the victim's widow at the counsel table during voir dire was prejudicial. The trial court has wide discretion to control conduct at trial, *Commonwealth v. Jones*, 314 Pa. Super. 497, 461 A.2d 267 (1983), and in my opinion the trial court did not abuse that discretion. Therefore, I would affirm the judgment of sentence.