THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS SAMUEL ADAMS, Defendant-Appellant.

(No. 71-312;

Fifth District—December 21, 1972.

Kenneth L. Jones, of Defender Project, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Betty Campbell Wolf, both of Model District State's Attorney's Office, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant was tried before a jury in the Circuit Court of St. Clair County in an indictment charging him with two murders. He was acquitted of one and was found guilty of involuntary manslaughter on the other and was sentenced for a term of two to ten years in the penitentiary. The principal issue in this appeal is whether a defendant can be

found guilty of involuntary manslaughter of a third person unintentionally killed by him while defending himself against an unlawful attack by another.

It is undisputed that on August 22, 1970, at about 9:15 in the evening in the City of Centreville defendant shot and killed LeRoy Robinson and that one of the bullets passed through Robinson and killed Mary Davis. Neither the events leading up to the shooting nor the facts surrounding the shooting itself are entirely clear, but both the defendant and the State seem to accept the following summary. Defendant and Robinson were acquaintances, and shortly before the shooting, they were together with mutual friends in a car parked outside a tavern. There was testimony that they had an argument as to which one of them owed the other a small amount of money, that no threats were exchanged, but that defendant was observed to have a gun in his possession. This incident ended when defendant and his wife left the car and started to walk to their home a few blocks away and Robinson went back to his own car. The State's only witness to the actual shooting was John Brooks. He stated that he and Robinson had been together most of the day and that they had been drinking on and off for 10 or 12 hours; that when Robinson came back to his car he, Brooks, was sitting in the back seat and that Mary Davis, Robinson's girl friend, was sitting in the front seat alongside Robinson. When Robinson drove his car up to defendant, who was walking, Brooks saw defendant approach the car with a gun in his hand, saw the pistol when it flashed in the window, and heard 3 or 4 shots fired. He did not hear any words exchanged between defendant and Robinson. He said that Robinson fell out of the car and then he, Brooks, took off Robinson's wrist watch and handed it to Mary Davis. He saw her walk off and did not notice anything unusual about her condition. Two police officers testified that they found Brooks in the car shortly after the shooting, that he was not completely coherent, that contrary to his trial testimony he had told them originally that he was sitting in the front seat and Mary was in the back seat. They found Robinson's body outside the car and a .38 caliber slug on the front seat. The coroner testified that Robinson had four bullet wounds, three of which had passed through his body. Mary had a bullet wound of the abdomen and had died approximately 4 hours after having been shot. The State presented no evidence, either ballistically or otherwise, linking the bullet found in Mary's body to defendant's gun, nor did they offer any explanation of how or when Mary got to the hospital where she apparently had died.

For the defense one witness testified that shortly before the shooting he had noticed that Robinson had a gun under the front seat of his car. Another witness, Paris Calame, testified that he lived with Robinson and

that he was in the car at the time of the shooting. He said that Robinson was the first to shoot, that he fired two shots into the ground and that defendant hollered, "You are shooting at me", and that then defendant "went" to shooting. He said he and Mary both jumped out of the car and broke and ran, but that she did not go far until she fell screaming that she had been shot. He said that he arranged for her to be taken to the hospital. Two other witnesses testified that Robinson had a reputation for violence.

Defendant testified that during their earlier argument he had given Robinson $2.00 after Robinson had threatened him with a gun; that later, while he and his wife were walking home, Robinson pulled up alongside them in his car, cursed him and demanded more money. He stated that Robinson fired at him twice, that he could see the flashes and that he figured his life was in jeopardy so he returned the fire as Robinson started to get out of the car.

The State argues that self-defense does not necessarily protect an individual from criminal responsibility for all his acts performed in defending his life against a felonious assault, and that even though defendant's conduct here may have been justified as to Robinson nonetheless it constituted a reckless disregard for the consequences toward Mary Davis, and, as such, supported his conviction for involuntary manslaughter.

■■ Neither the State nor the defendant has cited any Illinois precedent on this precise issue nor has our search revealed any. However, the issue has been considered in other jurisdictions and is the subject of an annotation in 18 A.L.R. 917, at page 927. The generally accepted view is that if a person without legal excuse or justification, shoots at one individual and inadvertently kills another, he is guilty of the same degree of unlawful homicide as if he had killed the object of his aim, but if he was acting in self-defense and accidentally killed another, he is guilty of no crime. (*Gettings v. State* (Ala.) 29 So.2d 677. See also, *Gaines v. State*, 67 Tex. Crim. Rep. 325, 148 S.W. 717; *McCullough v. State*, 62 Tex. Crim. Rep. 126, 136 S.W. 1055; *Ringer v. State*, 74 Ark. 262, 85 S.W. 410; *Shelton v. Comm.*, 145 Ky. 543, 140 S.W. 670.) In 40 Am.Jur.2d, Homicide, Sec. 144, it is stated that if the circumstances are such that they would excuse the killing of an assailant in self-defense, the emergency will be held to excuse the person assailed from culpability, if in attempting to defend himself he unintentionally kills or injures a third person. In *Spannell v. State*, 83 Tex. Crim. 418, 203 S.W. 357, an accused was charged with killing his wife and a third person while defending himself from an unlawful attack by the third person. In separate trials he was first acquitted of the murder of his wife based on the above rule that one who unintentionally kills

another while defending himself against unlawful attack of a third person, is guilty of no offense. In a subsequent trial he was convicted of the murder of the third person. The reviewing court reversed the conviction on the grounds that the first case determined his lack of guilt by reason of self-defense and precluded his conviction in the second case.

■■ We are aware that the above rule is not absolute and that, as pointed out in the A.L.R. Annotation, it may be subject to modification depending on the circumstances involved. But we do not believe such circumstances present themselves in the case before us. There were other persons present in the car with defendant's assailant, but it was dark and defendant was being fired on at close range. He had very little time to think or assess the situation. He had to act immediately to protect himself from a man who had been drinking all day and who was not just threatening him but was shooting at him. Even under such circumstances defendant did not shoot wildly or carelessly. From the record it can be inferred that he hit his assailant with every shot and that the innocent victim was killed only as a result of a bullet passing through the body of the assailant. We conclude that under the circumstances of this case the killing of Mary Davis constituted no crime.

We have reviewed the cases cited by the State and find them inapplicable here. It is true that in *People v. Benson*, 132 Ill.App.2d 443, 270 N.E.2d 181, it is stated that the exoneration of self-defense applies only where it is the aggressor who suffers the harm, but such statement constituted mere dictum. The issue was not considered in depth, nor was it necessary to the decision of the court. Actually, the court rejected defendant's claim of self-defense and specifically held that the trial court did not commit error in refusing to instruct the jury on self-defense. We cannot accept the case as having any persuasive affect on the case before us.

The judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

EBERSPACHER, P. J., and JONES, J., concur.