676 A.2d 665

**COMMONWEALTH of Pennsylvania**

v.

**Anthony Michael FOWLIN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1995.

Filed April 12, 1996.

490

Gary N. Asteak, Easton, for appellant.

Mark Refowich, Assistant District Attorney, Easton, for Commonwealth, appellee.

Before ROWLEY, President Judge *, CAVANAUGH, WIEAND,** McEWEN, CIRILLO, DEL SOLE, BECK, JOHNSON and CERCONE, JJ.

## OPINION IN SUPPORT OF AFFIRMANCE

CAVANAUGH, Judge.

This appeal presents us with the question of whether a criminal defendant, who uses justifiable force in defending himself against an assailant(s), may nonetheless be held criminally culpable for unintentionally injuring an innocent bystander. Having concluded that a criminal defendant may be held criminally culpable in these circumstances, we affirm the trial court's order which denied appellant's petition for habeas corpus relief, and remand the case for trial.[1]

In the early morning hours of December 12, 1993, appellant was at a crowded nightclub in Easton, Pennsylvania. He was approached by three men. One of the men sprayed pepper gas in appellant's face and eyes. Another, Daniel Clary, displayed a handgun. Because of these circumstances, and a prior incident involving appellant and his attackers, appellant

---

* President Judge Rowley did not participate in the consideration or decision of this case.

** This decision was reached prior to the death of Wieand, J.

1. An order denying a defendant's petition for habeas corpus is interlocutory. *See* Pa.R.A.P. 341. The trial court certified, pursuant to 42 Pa.C.S.A. § 702(b), that its order involved a controlling question of law as to which there was substantial ground for difference of opinion and that an immediate appeal from the order could materially advance the ultimate termination of the case. Appellant then petitioned this court for permission to appeal under Pa.R.A.P. 1311 (Interlocutory Appeals by Permission). We granted the petition, and the case was listed for argument before the Court en banc.

believed his life was in danger. Appellant drew his own gun and fired it repeatedly, killing Clary, wounding another of his attackers, and wounding a bystander, Valerie Lewis, who was at least fifteen feet away. Appellant then immediately left the club and turned himself in to the Easton police.

Appellant was subsequently charged with various offenses stemming from the shootings at the nightclub. The district attorney later concluded that appellant had acted in justifiable self-defense as to his attackers and withdrew all charges pertaining to his acts towards them. With respect to the injured bystander, the district attorney elected to pursue charges of aggravated assault and recklessly endangering another person. Appellant filed a petition for habeas corpus, seeking dismissal of these charges. The trial court denied the petition. This appeal followed.

Appellant contends that because he was lawfully defending himself against his attackers, he had no criminal intent which could be transferred to his unintended victim. In other words, because he did not act in a criminally culpable manner with regard to his attackers, he maintains that he cannot be held accountable for the unintended consequences of his lawful and justified actions.

▬▬ Whether a defendant may be held criminally culpable under these circumstances appears to present a question of first impression in this Commonwealth.[2] Other jurisdictions have, however, addressed this issue.

**2.** Although our courts have not addressed this specific question, Pennsylvania does recognize the analogous defense of "homicide by misadventure." *Commonwealth v. Cutts,* 281 Pa.Super. 110, 113, 421 A.2d 1172, 1173 (1980).

A homicide committed *per infortunium,* i.e., accidentally, is legally excusable. As explained in *Commonwealth v. Flax,* 331 Pa. 145, 156–57, 200 A. 632, 637–638 (1938): "Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. Three elements enter into the defense of excusable homicide by misadventure: [1] The act resulting in death must be a lawful one. [2] It must be done with reasonable care and due regard for for the lives and persons of others. [3] The killing must be accidental and not intentional, or without unlawful intent, or without

The general rule in criminal law that one who does an unlawful act is liable for the consequences even though they may not have been intended may have a more specific counterpart in the rule in homicide and assault cases that a homicide or assault partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the blow fallen upon the intended victim instead of the bystander. Under this rule the fact that the bystander was killed or injured instead of the intended victim becomes immaterial, and the only question at issue is what would have been the degree of guilt if the issue intended had been accomplished; the intent is transferred to the person whose death or injury has been caused.

If then, the perpetrator of the homicide or of the assault had no criminal intent in attempting to injure or kill another person, as where the perpetrator was lawfully defending himself from the harm sought to be inflicted upon him by such other person, the fact that, on that occasion, a third person was unintentionally injured or killed by the perpetrator would not make him liable unless the perpetrator acted carelessly or without regard to the safety of innocent bystanders. This view has been applied in a variety of circumstances in which the perpetrator of the homicide or

evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve guilt.' " *Commonwealth v. Chermansky*, 430 Pa. 170, 175–76, 242 A.2d 237, 241 (1968).

Here, appellant does not satisfy all three elements of the defense. As will be discussed more fully *infra*, the Commonwealth established **prima facie** that appellant acted recklessly toward the injured bystander. Thus, the defense will not apply. This conclusion, however, does not end our inquiry. Appellant contends that the injury to the bystander was excused by virtue of the defense of justification. Although analogous, justification and homicide by misadventure are separate and distinct defenses. *See Commonwealth v. Harris*, 542 Pa. 134, 665 A.2d 1172 (1995) (defense of self-defense is mutually exclusive of the defense of accident or mistake). We must determine whether the defense of justification applies in this case to excuse the injury to the innocent bystander. For purposes of our analysis, however, it is instructive that our courts have held that the defense of homicide by misadventure will not apply, where the defendant acts recklessly or negligently towards other persons, even when his actions are otherwise lawful.

assault has been prosecuted for murder, manslaughter, or assault, based upon injury to, or death of, a third person.

Annotation, *Unintentional Killing of or Injury to Third Person During Attempted Self-Defense*, 55 A.L.R.3d 620, 622–23 (1974).[3]

The doctrine of transferred intent is recognized in Pennsylvania:

### § 303.  Causal relationship between conduct and result

**(b) Divergence between result designed or contemplated and actual result.**—When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b). *See also, Commonwealth v. Gaynor,* 538 Pa. 258, 648 A.2d 295 (1994) (Intent to kill could be attributed to defendant, where defendant and intended victim were firing weapons at each other with intent to kill, and bystander was killed by shot fired by intended victim).

**3.** Other jurisdictions are split as to whether a defendant may be held criminally culpable when he injures an innocent bystander while acting in lawful self-defense. The following jurisdictions appear not to hold a defendant culpable in such a situation: Alabama, Arizona, Colorado, Connecticut, Georgia, Mississippi, Montana, New Mexico, North Carolina, Ohio, Oklahoma, Texas, Utah and Washington; while several other jurisdictions have noted or held that a defendant may be held culpable in these circumstances, where he acts recklessly or negligently: Arkansas, Delaware, Florida, Illinois, Kentucky, Louisiana, Michigan, Missouri and New York. 55 A.L.R.3d 623–25.

■ In view of the language of § 303(b), and caselaw applying this section, we too must conclude, as have other jurisdictions, that where an actor injures or kills a third person, but does not possess the mental state to injure or kill that third person, as where he was acting in self-defense, he cannot be held criminally culpable under the transferred intent doctrine. When a person acts in lawful self-defense, he does not possess an intent to injure or kill, but rather, he possesses an intent to protect himself from his attacker(s). *See Harris, supra* at 139, 665 A.2d at 1175. Because there is no criminal intent on the part of the actor, there is no mental state to be transferred to a third party who has been injured. § 303(b) will not apply in such circumstances because neither the death nor injury of one's attackers, or of an innocent party, is either intended or contemplated.

■ The question then becomes whether an actor will nonetheless be found culpable, where he is acting in justifiable self-defense, but either recklessly or negligently inflicts injury upon an innocent and uninvolved bystander. With respect to this question, the Model penal Code provides:

**Section 3.09   Reckless or Negligent Injury or Risk of Injury to Innocent Persons.**

(3) When the actor is justified ... in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded ... is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

\*    \*    \*    \*    \*    \*

**Comment**

3. **Risk of Innocent Persons.** Subsection (3) deals with the case where the actor is justified in using force against the person of another but recklessly or negligently creates the risk of injury of innocent persons at the same time. Such recklessness or negligence in some cases preclude any justification under the Model Code. But even when the force is deemed justifiable with re-

spect to its target, the claim may be advanced that the actor was reckless or negligent with respect to others.

The object of Subsection (3) is to preserve the possibility of lodging such a charge. Thus, an actor who believed that deadly force was necessary in order to preserve his own life could be prosecuted for his reckless or negligent endangering of other lives during the course of saving his own. Similarly, an actor might be justified under Section 3.06(3)(d)(ii) in using deadly force to prevent the consummation of a robbery in which the offender threatened the actor with deadly force, but could be prosecuted for recklessness or negligence if in the course of his conduct he exposed innocent persons to danger or actually inflicted injury upon them. The justifying incident, in other words, does not provide the occasion for reckless or negligent conduct towards innocent persons.

It should be added that in assessing such a charge of recklessness or negligence, the actor's justifying purpose must, of course, be given weight in determining whether the risk to innocent persons was sufficient to establish a gross deviation from proper standards of conduct. The definitions of recklessness and negligence are explicit on this point, each involving a substantial and "unjustifiable" risk that a danger to innocent persons will result. Thus, if the only way to save one's life is to use deadly force that creates some risk of harm to others, that force might be justified. A similar use of force might not, however, be justified to stop a fleeing armed robber if there were danger to others. Although the risk to the life of the robber does not outweigh the benefits of preventing his escape, the risk to others might well do so.

*Model Penal Code* § 3.09 (1985). Thus, a person who acts in justifiable self-defense, but recklessly or negligently injures or creates a risk of injury to innocent persons, may be found culpable under the theory that the incident which justified the use of force in self-defense, does not justify or excuse reckless or negligent conduct towards innocent bystanders.

Appellant contends that 18 Pa.C.S.A. § 505(b)(3), regarding the use of force in self-defense, already incorporates a standard of care which does not include the Model Penal Code's reckless/negligent standard. That section provides:

### § 505. Use of Force in Self–Protection

**(b) Limitations on justifying necessity for use of force.—**

(3) Except as required by paragraphs (1) and (2) of this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

18 Pa.C.S.A. § 505(b)(3). Appellant maintains that under this section, the amount of force employed by the person acting in self-defense is left totally within that person's discretion. We reject such a contention.

Section 505(b)(3) allows the actor to determine whether, under the circumstances as he believes them to be, it is necessary to use defensive force. Such discretion includes not only the decision to use such force, but the level of force to employ, and the manner in which such force is utilized. Though such discretion is afforded the actor, the right to use force in self-defense is not an absolute right, but rather, is a qualified one.[4]

---

**4.** §§ 505(b)(1) and (2) contain statutorily proscribed limits on the use of force:

**(b) Limitations on justifying necessity for use of force.—**
(1) The use of force is not justifiable under this section:
(i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful; or
(ii) to resist force used by the occupier or possessor of property or by another person on his behalf, where the actor knows that the person using the force is doing so under a claim of right to protect the property, except that this limitation shall not apply if:
(A) the actor is a public officer acting in the performance of his duties or a person lawfully assisting him therein or a person making or assisting in a lawful arrest;

■ The law of justification in this Commonwealth is modeled after the Model Penal Code; and § 505(b)(3) is identical to the corresponding provision, § 3.04(2)(c), of the Code. As illustrated by the explanatory note and comment of § 3.04, while an actor's actual belief, that it is necessary to use force in self-defense, is sufficient to support the defense, where this belief is mistaken and is recklessly or negligently formed, or he acts in a reckless or negligent fashion, the actor may be prosecuted for an offense of recklessness or negligence. This

(B) the actor has been unlawfully dispossessed of the property and is making a reentry or recaption justified by section 507 of this title (relating to use of force for the protection of property); or

(C) the actor believes that such force is necessary to protect himself against death or serious bodily injury.

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

(A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be; and

(B) a public officer justified in using force in the performance of his duties or a person justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to prevent such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed.

18 Pa.S.C.A. §§ 505(b)(1) and (2). This list of limitations is not exhaustive. Subsections (a) (set forth *infra* ) and (b)(3) of § 505 provide the general principles which govern the use of force in self-protection, while the above sections, (b)(1) and (2) provide exceptions to the use of such force. Comment, *Model Penal Code* § 3.04 (1985). The specific facts of a case will determine whether the force used was justifiable; and judicial decision will dictate what further limitation or scrutiny, based upon specific facts, will be placed on the use of self-defensive force. *See Cutts, supra* (defendant's use of a "shiny instrument" to inflict serious injury on victim's arm was excessive given that he was

principle is set forth in § 3.09 of the Model Penal Code, set forth in part, *supra.* Although Pennsylvania has not codified a provision similar to § 3.09, the language of 18 Pa.C.S.A. § 505(b)(3) and § 3.04 of the Model Penal Code (regarding the use of force in self-protection) does not specifically foreclose prosecution where defensive force is employed in a reckless or negligent manner, but rather, leaves open such a possibility.[5] Moreover, the law of justification in this Commonwealth, while modeled on the Model Penal Code, is essentially a codification of the common law of self-defense as it existed in the Commonwealth prior to the legislature's statutory enactment. *Commonwealth v. Walley,* 466 Pa. 363, 367 n. 3, 353 A.2d 396,

only immediately threatened by one girl who was poking him with a stick).

5. Judge Cirillo's opinion in support of reversal takes issue with our conclusion that § 505 does not foreclose prosecution, where justifiable defensive force is used in a reckless or negligent manner, and results in the injury of an innocent bystander. It cites to 18 Pa.C.S.A. § 505(a)(3), for the proposition that this Court cannot impose such a requirement, with respect to third persons, in the absence of a clear expression by the legislature to limit the use of justifiable force in this fashion. This, however, is a misinterpretation of the scope and meaning of § 503.

§ 503(a) provides:

**§ 503  Justification generally**

(a) **General rule.**—Conduct which the actor believes to be necessary to avoid a harm or evil to himself or another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S.A. § 503(a). This section provides three criteria which must be met in order for an actor's defensive conduct to be deemed justified. The third of these criteria is, simply, that the legislature must not have declared that the specific conduct of the actor can never be deemed justifiable. Read in context, it is clear that § 503(a)(3) does not state that only the legislature may limit the application of the defense of justification; but rather, that the defense will not apply in circumstances where it has clearly been limited by the legislature. Moreover, § 503(a)(2) provides that the defense of justification will not apply where it has been limited by either statutory law or judicial decision. As such, our interpretation of § 505 (Use of force in self-protection) is a proper exercise of this Court's judicial authority.

398 n. 3 (1976). Because our research reveals no prior caselaw regarding a situation where one acting in self-defense acts recklessly or negligently, it is not surprising that there exists no Pennsylvania statutory law corresponding to § 3.09 of the Model Penal Code. Thus, the question remains, whether an actor who acts recklessly or negligently, while employing justifiable self-defense, may be held criminally culpable for his reckless and/or negligent acts towards innocent bystanders.

■ Section 505(a) provides:

**§ 505.  Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S.A. § 505(a). As noted *supra*, § 505(a) and b(3) provide the general principles that govern the use of force in self-protection. Implicit from the language of these sections is a requirement that an actor conduct himself in a prudent and reasonable manner when using force in self-defense. It is fundamentally rational to assume that an extraordinary rule of law which holds one free of legal responsibility for an act of homicide, would not as a consequence, also extend to the actor a license to commit mayhem on an innocent bystander. Although the factfinder must view a claim of self-defense under the circumstances as the actor believes them to be when the force is used, the factfinder is not required to conclude that the actor's conduct was justified where, under the circumstances, the factfinder finds that the actor responded unreasonably or inappropriately, as to the use of force, the amount of force, or the manner in which the force was employed.[6] To conclude otherwise would, in effect, give the actor a blank check, and allow him to respond in any manner and with

**6.** As noted *supra*, with respect to the defense of homicide by misadventure, reckless or criminally negligent behavior towards other person(s), on the part of the defendant, precludes the applicability of that defense, even where the defendant's actions were otherwise lawful.

whatever level of force he chose so long as protective force was subjectively deemed necessary. Such blanket authority for the use of self-defense defies logic. This is especially so in contemporary society, where possession of lethal weapons, and confrontations involving them, have become all too commonplace. Based upon these considerations, we now hold that where an actor is justified in using force upon or toward another person, but recklessly or negligently injures or kills an innocent person(s), the justification afforded the actor by § 505 is unavailable, in a prosecution based upon reckless or negligent conduct towards the innocent person(s).[7,8]

7.  As noted *supra*, other jurisdictions have reached the same or a similar conclusion to the one we reach today. *See People v. Morris*, 109 A.D.2d 413, 491 N.Y.S.2d 860 (1985) (where a defendant is justified in shooting an attacker, he is no less justified in shooting an innocent bystander accidentally; in certain circumstances, however, a defendant may be convicted of a lesser included offense if the jury concluded the injury to the bystander was caused by defendant's reckless or negligent conduct; *People v. Jackson*, 390 Mich. 621, 212 N.W.2d 918 (1973) (unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense; it may however be manslaughter if, considering all the circumstances, the defendant's conduct toward the bystander was reckless); *People v. Adams*, 9 Ill.App.3d, 61, 291 N.E.2d 54 (1972) (one who acts in self-defense and accidentally kills another is guilty of no crime; but this rule is not absolute and may be subject to modification depending on the circumstances).

8.  We note that where the actor is reckless or negligent, he will only be subject to conviction of a crime for which recklessness or negligence, as the case may be, is otherwise sufficient to establish culpability. The actor, clothed with the defense of justification as to his attackers, may not be convicted of offenses which require a purposeful (specific intent) or knowing mental state. In other words, the actor may only be charged commensurate with the level of culpability he actually manifested in furtherance of the offense(s) charged.

   Recklessness is defined by the Crimes Code:
   (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

   18 Pa.C.S.A. § 302(b)(3). Negligence is also defined by the Crimes Code:
   (4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable

■ Having concluded that appellant may be held criminally culpable in this case, we now turn to its specific facts to determine whether they support the charges filed by the Commonwealth.

We have noted that, "[i]n the pre-trial setting, the focus of the habeas corpus hearing is to determine whether sufficient Commonwealth evidence exists to require a defendant to be held in government 'custody' until he may be brought to trial." *Commonwealth v. Morman*, 373 Pa.Super. 360, 367, 541 A.2d 356, 360 (1988). A pre-trial petition for a writ of habeas corpus thus is similar in purpose to a preliminary hearing. *Id.* at 365, 541 A.2d at 359. And, of course,

> risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4). We note that negligence as defined in this section is criminal negligence and not ordinary negligence.

We further note that in the present case, appellant was charged with aggravated assault. As set forth more fully *infra*, aggravated assault requires the Commonwealth to prove that a defendant caused serious bodily injury to another, intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1). Because appellant, in the present case, acted in lawful self-defense, the Commonwealth would be precluded from pursuing this charge based on an intentional or knowing infliction of serious bodily injury. Since appellant possessed neither a purposeful or knowing mental state towards his attackers, he cannot be charged with such a mental state towards his unintended victim. We further point out that the remaining mental state required to prove aggravated assault—causing serious bodily injury recklessly under circumstances manifesting extreme indifference to the value of human life—constitutes a higher level of culpability than mere recklessness as codified at 18 Pa.C.S.A. § 302(b)(3). *Cf. Commonwealth v. Fierst*, 423 Pa.Super. 232, 620 A.2d 1196 (1993) (in a third degree murder prosecution, where malice is based upon recklessness of consequences, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury; mere recklessness, as codified at 18 Pa.C.S.A. § 302(b)(3) is not sufficient to establish the requisite malice for third degree murder). A defendant can be charged with aggravated assault so long as the facts · of the case indicate that, while acting in self-defense, he injured a bystander recklessly under circumstances manifesting an extreme indifference to the value of human life. Proof of mere recklessness will not suffice to support a charge of aggravated assault in such a case.

" '[t]he primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection . . .' " *Id.* (citations omitted). The *Morman* Court also made clear that, in making this pre-trial determination, the habeas court is not limited to reviewing the evidence presented at the preliminary hearing; instead, "the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least **prima facie** that a crime has been committed and that the accused is the person who committed it." *Id.* at 365–66, 541 A.2d at 359.

*Commonwealth v. Owen,* 397 Pa.Super. 507, 508–09, 580 A.2d 412, 413 (1990). Moreover, with regard to the sufficiency of proof required to establish a **prima facie** case, we have stated:

The quantity and quality of evidence presented there "should be such that if presented at trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury." *Commonwealth ex rel. Scolio v. Hess,* 149 Pa.Super. 371, 27 A.2d 705 (1942). The Commonwealth's burden at a preliminary hearing is to establish at least prima facie that a crime has been committed and that the accused is the one who committed it. *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975). This means that at a preliminary hearing, the Commonwealth must show the presence of every element necessary to constitute each offense charged and the defendant's complicity in each offense. Proof, beyond a reasonable doubt is not required, nor is the criterion to show that proof beyond a reasonable doubt is possible if the matter is returned for trial. **However, proof, which would justify a trial judge submitting the case to the jury at the trial of the case, is required.** Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, *Commonwealth v. Rodgers,* 235 Pa.Super. 106, 340 A.2d

550 (1975), and the evidence must be read in the light most favorable to the Commonwealth's case. *Commonwealth v. Zeringo,* 214 Pa.Super. 300, 257 A.2d 692 (1969). **Prosecutorial suspicion and conjecture are not evidence and are unacceptable as evidence.**

Our function is to take the facts proven **by the Commonwealth at the preliminary hearing** and to determine whether the sum of those facts fits within the statutory definition of the types of conduct declared by the Pennsylvania legislature in the Crimes Code to be illegal conduct. **If the proven facts fit the definition of the offenses with which the appellees are charged, then a prima facie case was made out as to such offense or offenses.** If the facts do not fit the statutory definitions of the offenses charged against the [defendant], then the [defendant] [is] entitled to be discharged.

*Commonwealth v. Snyder,* 335 Pa.Super. 19, 23–24, 483 A.2d 933, 935 (1984) (emphasis supplied) (*quoting Commonwealth v. Lynch,* 270 Pa.Super. 554, 581–82, 411 A.2d 1224, 1238–39 (1979) (plurality opinion), *aff'd in part, rev'd in part sub nom. Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983) (plurality opinion); *see also Commonwealth v. Wojdak, supra* (to prove **prima facie** case, Commonwealth must show existence of each material element of charge; "the absence of evidence as to the existence of a material element is fatal.")

*Id.* at 510–11, 580 A.2d at 414 (emphasis in original).

After reviewing the evidence presented at the hearing on appellant's petition, we conclude that the Commonwealth presented sufficient evidence to establish a **prima facie** case against appellant on the charges of aggravated assault and recklessly endangering another person are defined as follows:

§ 2702.—Aggravated assault

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or reckless-

ly under circumstances manifesting extreme indifference to the value of human life;

18 Pa.C.S.A. § 2701(a)(1).

### § 2705.—Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

At the hearing below, the Commonwealth introduced the following evidence. Appellant was at a crowded nightclub in the early morning hours of December 12, 1993. He was approached by three men, one of whom sprayed pepper gas in appellant's face and eyes, while another displayed a handgun. Despite being unable to see clearly because of the presence of the pepper gas in his eyes, appellant responded by drawing his own gun and opening fire. He fired eleven times, sweeping his gun left to right in a semicircle and spraying bullets about the club. As a result of this barrage of gunfire, one of appellant's attackers was killed, another was wounded, and an innocent bystander, who was not in the immediate vicinity of the altercation, was also wounded. In light of these facts, there exists sufficient evidence to make out a **prima facie** case on the crimes charged, with regard to the injuries to the innocent bystander. As such, the trial court did not err in denying appellant's petition for habeas corpus.[9]

9. Appellant contends that his actions were not reckless because he fired directly at his assailants, and also because at least one bullet passed through the decedent, and this bullet could be the one which struck the innocent bystander. (It is unknown where this bullet finally came to rest.) The fact remains, however, that appellant fired his weapon in a semicircle, sweeping the gun left to right and firing eleven bullets in a crowded club. Additionally, it is unclear from the transcript exactly where the innocent victim was located with respect to appellant and his attackers. The victim did testify, however, that the decedent was to her right and that appellant was to her left. It thus would appear that she was not in the direct line of fire, and that appellant's claim (that the bullet that passed through the decedent hit her) is dubious. In any event, our review of appellant's actions and the surrounding circumstances leads us to conclude that the Commonwealth presented sufficient evidence to hold appellant for trial on the offenses charged.

In sum, we have concluded that a person acting in lawful self-defense, who recklessly or negligently injures an innocent bystander, may be held criminally culpable for the injuries inflicted upon the bystander. We have also further determined that under the facts of this case, the Commonwealth has presented sufficient evidence to hold appellant for trial on the crimes charged. We, therefore, affirm the order of the trial court which denied appellant's habeas corpus petition, and remand the case for trial.[10]

Order affirmed. Case remanded for trial. Jurisdiction relinquished.

DEL SOLE, JOHNSON and CERCONE, JJ., join.

DEL SOLE, J., files a Concurring Opinion in Support of Affirmance in which CAVANAUGH and JOHNSON, JJ., join.

CIRILLO, J., files an Opinion in Support of Reversal.

WIEAND, J., files a Statement in Support of Reversal in which McEWEN and BECK, JJ. join.

DEL SOLE, Judge, concurring, in support of affirmance.

I join Judge Cavanaugh and the opinion he expresses in this case, but write separately to note my disagreement with the views set forth in the Dissenting Opinion of Judge Cirillo and the Concurring and Dissenting Opinion of Judge Wieand.

This case arises following the district attorney's decision to pursue charges of reckless endangerment and aggravated assault against Fowlin for his actions which resulted in injury to the bystander. The district attorney was also responsible for concluding that Fowlin's action towards his attackers was justified. This conclusion resulted in the withdrawal of all

10. Judge Cirillo's opinion in support of reversal declares that our decision creates an *ex post facto* judicial rule of law. We note, however, that the posture of this case is an appeal from the denial of a petition for habeas corpus. All that we are required to decide is if the Commonwealth has made out a **prima facie** case as to the charged offenses. Whether or not our decision constitutes an *ex post facto* law is not properly before us at this time. Rather, it is a matter which should be presented to the trial court, and decided by it in the first instance.

charges involving Appellant's attackers, a decision well within the prosecutor's discretion. However, withdrawing the charges related to the attackers is not binding on the district attorney when deciding to bring reckless endangerment and aggravated assault charges for the injuries to the bystander. Nor would a jury be bound by the Commonwealth's withdrawal of charges when determining guilt on the reckless endangerment and aggravated assault charges. Thus, I cannot accept Judge Cirillo's premise that the district attorney's determination of justifiable self-defense in regard to Fowlin's shooting of his attackers negates the Commonwealth's ability to pursue charges resulting from the shooting of an innocent bystander. Had the Commonwealth in this case decided to bring charges against Fowlin for both the actions against the attackers and the related assault of the bystander, a jury verdict, which acquitted of him on the attacker's related charges, and judged him guilty of reckless endangerment and aggravated assault to the innocent victim, would stand. In fact while it has often been held that a jury may reach inconsistent verdicts, in my judgment such a result would not be inconsistent. *Commonwealth v. Miller,* 441 Pa.Super. 320, 657 A.2d 946 (1995).

I also cannot adopt the position taken by Judge Wieand in his Concurring and Dissenting Statement in which he finds that the Commonwealth failed to set forth a prima facie case under the circumstances. This conclusion is a determination that the Appellant's conduct, as a matter of law, does not rise to the culpability level required by the statute. I disagree and believe a prima facie case was clearly established. It is ultimately for a jury to determine whether the justifying purpose of Fowlin's conduct was greater than the risk it posed to innocent bystanders. *See Model Penal Code* § 3.09 (1985) This is a matter for a jury to consider and it should not be decided prematurely.

CAVANAUGH and JOHNSON, JJ., join this Opinion.

CIRILLO, Judge, dissenting, in support of reversal.

The defendant, Anthony Michael Fowlin (Fowlin), appeals from the trial court's denial of his petition for habeas corpus relief. Because I find the majority's decision is in direct contravention of both the statutory and the settled common law of this Commonwealth, I must respectfully dissent.

The record reveals that in the early morning hours of December 12, 1993, appellant Fowlin was in a local nightclub when three men accosted him. One of the men sprayed pepper gas in Fowlin's eyes, while another of the assailants displayed a handgun. Because of a previous incident during which one of the assailants had shot him, Fowlin believed that the assailants intended to kill him. As a result, he removed his own gun, which he was licensed to carry on his person, and although blinded from the pepper gas, Fowlin allegedly aimed at the floor and fired eleven shots in the direction of his attackers. Fowlin killed one of his attackers, wounded another, and also wounded a bystander.

There were approximately two hundred people in the club at the time of the incident. Immediately following the shooting, Fowlin left the club and turned himself in to the Easton police. He gave a statement to the officers and relinquished his gun and the clip containing the unused rounds.

Fowlin was charged with various crimes stemming from the shootings. After the investigation, however, the district attorney withdrew all the charges relating to Fowlin's acts towards his attackers. The district attorney accepted Fowlin's version of the events and was satisfied that, under the circumstances, Fowlin's actions constituted justifiable self-defense, thereby relieving him of any criminal culpability for the shooting of his attackers. The Commonwealth, however, decided to pursue charges of reckless endangerment and aggravated assault for the injury to the bystander.

Fowlin filed a petition for habeas corpus relief, which the trial court denied. The trial court, although finding no authority under the law of Pennsylvania, concluded that Fowlin could be criminally liable for recklessly inflicting injury upon a

bystander in the course of employing lawful self-defense. Fowlin appeals and challenges the trial court's decision as an error of law.

This court's function in reviewing habeas corpus proceedings is to determine whether the Commonwealth has established a prima facie case, that is, the presence of each and every element necessary to constitute the offense charged. *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412 (1990). We must review the facts proven by the Commonwealth and

> determine whether the **sum of those *facts* fits within the statutory definition of the types of conduct declared by the Pennsylvania legislature in the Crimes Code to be illegal conduct.** If the proven facts fit the definition of the offenses with which the appellees are charged, then a prima facie case was made out as to such offense or offenses. If the facts do not fit the statutory definition of the offenses charged against the [defendant], then the [defendant is] entitled to be discharged.

*Id.* at 510, 580 A.2d at 414 (emphasis added). Furthermore, the Commonwealth must show the existence of each material element of the charge in order to establish a prima facie case; "the absence of evidence as to the existence of a material element is fatal." *Id.* at 511, 580 A.2d at 414.

The law of this Commonwealth is well-settled that to defeat a claim of self-defense, the Commonwealth must establish *one* of the following elements beyond a reasonable doubt:

> (1) that the defendant did not reasonably believe it was necessary to act in order to protect himself against death or serious bodily harm; or
>
> (2) that the defendant used more force than was reasonably necessary, considering all of the surrounding circumstances, to save himself from death, serious bodily injury, or the commission of a felony; or
>
> (3) that the defendant provoked the use of force; or,
>
> (4) that the defendant had a duty to retreat and that retreat was possible with complete safety.

18 Pa.C.S.A. § 505; *Commonwealth v. Miller,* 430 Pa.Super. 297, 307, 634 A.2d 614, 619 (1993); *see also Commonwealth v. McClain,* 402 Pa.Super, 636, 587 A.2d 798 (1991), *alloc. denied,* 528 Pa. 636, 598 A.2d 993; *Commonwealth v. Helm,* 485 Pa. 315, 402 A.2d 500 (1979). Self-defense issues of whether a defendant acted out of a bona fide and reasonable belief that he was in imminent danger and whether the force employed under the circumstances was excessive are questions to be resolved by the fact-finder. *Commonwealth v. Hill,* 427 Pa.Super. 440, 629 A.2d 949 (1993), *appeal denied,* 538 Pa. 609, 645 A.2d 1313; *Commonwealth v. Carbone,* 375 Pa.Super. 261, 544 A.2d 462 (1988), *rev'd on other grounds,* 524 Pa. 551, 574 A.2d 584. The trier of fact must also determine whether or not the person making a claim of self-defense was the initial aggressor. *McClain, supra.*

In light of the previous attack upon Fowlin by one of his assailants, the Commonwealth does not question the reasonableness of Fowlin's belief that he was about to suffer either death or serious bodily injury. The evidence also establishes that Fowlin was sitting in the club when the three men approached and assaulted him and that Fowlin did not provoke the incident. The sole issue that the trier of fact must determine, therefore, is whether, while blinded by pepper gas, the firing of eleven shots in a semi-circle was excessive considering that the defendant was in close proximity to approximately two hundred other people.

The Crimes Code specifically provides that when a person is caught in the dilemma of either defending his person or injuring another, and is

> *reckless or negligent in bringing about the situation* requiring a choice of harms or evils *or in appraising the necessity for his conduct,* the *justification* afforded by this section *is unavailable* in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503(d) (emphasis added). It is clear, therefore, that the person's actions are *not justified* if he "consciously disregards" or "fails to perceive" a "substantial and unjustifia-

ble risk" of injury to innocent bystanders. 18 Pa.C.S.A. § 302(b)(3) (relating to recklessness); 18 Pa.C.S.A. § 302(b)(4) (relating to negligence). Implicit in the definition of each level of culpability, however, is the requirement that the risk be "unjustifiable." 18 Pa.C.S.A. § 302(b)(3), (4). Once the person's action are found to be justified, recklessness and negligence are no longer applicable.

One of the principal precepts of criminal law is that a defendant must act with "malice" in order to be criminally culpable for his conduct. When recklessness is the standard by which culpability is established, the attributes of the state of mind which evidence recklessness, and its relation to a claim of self-defense, are explained in our case law. In *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445 (1946), the Pennsylvania Supreme Court explained:

> When an individual commits an act of gross *recklessness* for which he must reasonably anticipate that death [or serious injury] to another is likely to result, he exhibits that 'wickedness of disposition, hardness of heart, cruelty, *recklessness of consequences, and a mind regardless of social duty* ' which proved that there was at the time 'the state or frame of mind termed malice.'

*Id.* at 183, 47 A.2d at 447 (quoting *Commonwealth v. Drum*, 58 Pa. 9 (1868)).

One hundred years after *Drum, supra,* and six years following the enactment of the Crimes Code, our supreme court held that "[a] claim of self-defense, if believed, would *negate any element* of 'ill-will, wickedness of disposition, hardness of heart, cruelty or *recklessness of consequences, and a mind regardless of social duty* ' necessary to constitute malice." *Commonwealth v. Hilbert*, 476 Pa. 288, 301, 382 A.2d 724, 731 (1978) (emphasis added). This remains the law of the Commonwealth. *Cf. Commonwealth v. Heatherington*, 477 Pa. 562, 385 A.2d 338 (1978) (in order to meet burden of proof on the element of malice, the Commonwealth must exclude self-defense beyond a reasonable doubt).

It is clear that both the reasonableness of the defendant's belief and the excessiveness of the force employed are questions of fact which would either establish or disprove the *existence of the justification.* Similarly, by going to the tavern with a loaded weapon, in light of the previous attack by his assailant and the rumors he had heard regarding another potential attack, Fowlin may not have been free from fault in bringing about the situation that required the act of self-defense. That question of fact, however, again concerns the *existence of the justification.*

Instantly, the Commonwealth conducted an investigation, and, after discussions with the district attorney's office, believed Fowlin's self-defense to be valid, *Hilbert, supra,* and concluded *on the record* that Fowlin acted in justifiable self-defense. Although my review of the limited facts of record indicates that it might have been possible for a trier of fact to conclude that Fowlin's actions in firing that many shots while in close proximity to hundreds of other people were reckless or negligent, and therefore excessive, the Commonwealth's concession that Fowlin's conduct was *justified,* however, conclusively establishes, *on the record,* the following facts: that Fowlin (1) did not provoke the use of force, (2) either had no duty to retreat or that retreat with complete safety was not possible, (3) that his belief concerning his immediate safety was reasonable, and (4) that the firing of eleven shots in a crowded room was not excessive. *Miller, supra.* Fowlin's actions under the circumstances are *either* reasonable *or* excessive. As the two positions are mutually exclusive of one another, there is nothing for the trier of fact to resolve. The Commonwealth has removed the questions from the province of the trier of fact and the issue concerning the existence of the justification, therefore, is moot.

Furthermore, the defendant's conduct does not occur in a vacuum and one must necessarily consider the *totality* of the circumstances under which it occurred. Either the firing of eleven shots in a crowded room in defense of his person was reckless or it was justified and the finding of one precludes finding the other when the conduct and the circumstances

surrounding it are identical.[1] Accordingly, the Commonwealth's admission on the record that Fowlin's actions were in *justifiable* self-defense eliminates the possibility of finding his actions were reckless.

The conclusion that one *must* draw, from both the Crimes Code and our case law, is that once the existence of *justifiable* self-defense is established, it *negates any element of recklessness, Hilbert, supra,* for any charge [2] relating to the defendant's actions which could be brought by the prosecution. As a result, the Commonwealth cannot show evidence of the existence of a material element of the charge. *Owen, supra.* I find, therefore, that the Commonwealth has failed to establish a prima facie case and the charges against Fowlin should be dismissed.[3] *Owen, supra.*

1. To hold otherwise raises concerns of double jeopardy, whereby the defendant, for the very same actions under the very same circumstances, simply by substituting another victim, can be tried in another action, after his conduct was previously found justified and excused. See *Commonwealth v. Caufman,* 541 Pa. 299, 662 A.2d 1050 (1995); *see also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (the test is whether each requires proof of a fact which the other does not).

2. With regard to Judge Del Sole's response to this premise, I do not dispute that the district attorney has the authority to decide which charges to pursue, and which charges to withdraw, in any prosecution. I also agree that a jury could well have acquitted Fowlin for the charges related to his attackers, and still found him guilty of reckless endangerment and aggravated assault to the bystander. If the issue were properly before the jury, I would have no trouble upholding such a result.

   The problem here, however, is not simply the Commonwealth's withdrawal of the charges relating to the attackers, but rather, its determination that Fowlin acted in lawful self-defense. I reiterate that, due to this admission, there is nothing for the jury to decide. I fail to see how the Commonwealth can disprove something beyond a reasonable doubt which it has conceded.

   I note this to reinforce the necessity for the legislature's involvement and for further analysis prior to implementation of this rule of law.

3. The remainder of my esteemed colleagues who would dismiss the charges against Fowlin can find no basis for concluding that the appellant's conduct was reckless or criminally negligent due to the emergency circumstances of this case. It is, however, the emergency or exigent circumstances in any case which would dictate the reasonableness of the defendant's belief and actions, thereby establishing whether those actions were either reckless or criminally negligent or in

The inquiry cannot end here, however, since the majority has concluded that, despite the fact that Fowlin's action were deemed justified, 18 Pa.C.S.A. § 505(b) "does not specifically foreclose prosecution where defensive force is employed in a reckless or negligent manner, but rather leaves open such a possibility" to pursue the charges of aggravated assault and reckless endangerment for the injury sustained by the by-stander. I find this conclusion misinterprets the Crimes Code.[4]

The Crimes Code specifically directs that a "legislative purpose to exclude the justification" must "plainly appear." 18 Pa.C.S.A. § 503(a)(1). The Code cannot, therefore, "leave open ... a possibility" to exclude the justification in an action for injury to the bystander where the justification is proved against the defendant's assailants; the legislative intent must be readily and clearly apparent. In analyzing the legislative purpose, it is important to note that the Crimes Code was modeled after the Model Penal Code, and the chapter concerning the law of justification adopted nine of the corresponding sections in the Model Penal Code. The one related section of the Model Penal Code that the legislature did not adopt, but upon which the majority relies, is section 3.09, which permits culpability when a person recklessly or negligently injures or

justifiable and lawful self-defense. I am unable to segregate the emergency circumstances so that they would apply to the assailants but not to a bystander who happens to be in the vicinity.

I also believe that the opinion that a defendant who uses justifiable force against his assailants should nonetheless be criminally liable for injuries inflicted on an innocent bystander sets a dangerous precedent. A person who retaliates in justified defense of his person is entirely at the whim of his attackers regarding the time, place and other surrounding circumstances during which they choose to assault him. Criminal liability would thus be predicate upon conditions outside the defender's control, a result inapposite to the purpose of the law to set guidelines according to which a person can comport his conduct. The ends of justice would be better served by assessing liability upon those who set the events in motion, rather than the person who must respond, and quickly, or risk serious bodily injury or death himself.

4. The majority has correctly concluded that a defendant cannot be found criminally culpable under the doctrine of transferred intent for injury to an innocent bystander when he acts in lawful self-defense. *See* 18 Pa.C.S.A. § 303.

risks injury to innocent persons during otherwise justified actions.

A long recognized maxim of statutory interpretation, *expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of another, lends credence to my conclusion that in specifically including nine sections, the legislature intended to specifically exclude the tenth. In the absence of legislative history to the contrary, we are compelled to reach this conclusion.

The majority also notes that the Crimes Code was essentially a codification of the common law as it existed up to the time of the legislature's enactment of the statute. It then rationalizes that since no case law could be found regarding a situation where one acting in self-defense is reckless or negligent, it was not surprising that there is no statutory law corresponding to § 3.09 of the Model Penal Code. As discussed earlier, the reason for this lies in the fact that the question of the defendant's recklessness under the circumstances deals directly with the *existence* of the justification, and therefore, one cannot find a case of record in Pennsylvania where a defendant was found to have acted recklessly under the circumstances in which the courts or trier of fact then went on to find that his actions of self-defense were justified.

Assuming, *arguendo*, that a defendant should be held criminally liable for injury to a bystander after it has been determined that he was acting in justifiable self-defense, the decision to create such liability remains the function of the legislature. Moreover, this decision should not be made in response to what even the trial court concludes is a "close case." [5]

5. Self-defense essentially invokes the natural instinct of self-preservation, and a legislative hearing in the General Assembly, with testimony on both sides of the issue from social scientists, behaviorists, and other interested participants, along with a more thorough analysis of the results and application of the law as enacted by those of our sister states who adopted section 3.09, is the more appropriate mechanism.

It is also important to note the inherent problems with such a rule. In assigning multiple levels of culpability under the same set of circumstances, one must inevitably draw a series of concentric circles emanat-

Nonetheless, even if the legislature were to adopt a section similar to § 3.09 of the Model Penal Code establishing such liability, the statute could not be retroactively applied to attach culpability to conduct that occurred before the law was effective. A defendant's criminal culpability can only be governed by the law of Pennsylvania as it existed at the time he committed his actions. *See Commonwealth v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970).

The decision of this court, however, accomplishes what the legislature could not, and the result, in effect, is an *ex post facto* judicial rule of law. An *ex post facto* law, which is constitutionally prohibited under both the United States Constitution and Article I, § 17 of the Pennsylvania Constitution, is any law which:

(1) makes an act done before the passing of the law, and which was innocent when done, criminal; or

(2) aggravates a crime or makes it greater than it was when committed; or

(3) changes the punishment or inflicts greater punishment than the law annexed to the crime when it was committed; or

(4) changes the legal rules of evidence, requiring less or different testimony than law required at the time the offense was committed in order to convict.

ing outward from the defendant at the center. One must then determine the distance within which the defendant's actions are justified. The defendant would then be excused for injuring anyone within a circle of that diameter, and liable for injury to anyone outside that circle. How and where does one draw the line?

Instantly, it appears that the assailants were six to ten feet from Fowlin and the injured bystander was approximately fifteen feet away. Should the jury split the difference and set the limit at twelve feet? Should the line end at the distance where the last assailant was located or at the distance where the first bystander would be?

One can anticipate the absurd and unfair consequences that could arise when placing this type of dimensional analysis into a decision, which would establish culpability for the defendant's actions against one person, but justify his actions against the next person. It seems that determining the existence of the justification after considering all the surrounding circumstances ultimately leads to a more uniform and predictable result.

*Commonwealth v. Kalck,* 239 Pa. 533, 87 A. 61 (1913) (citing *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798)). "A law is unconstitutionally '*ex post facto* ' if it deprives the defendant of a defense to criminal liability that he had prior to enactment of the law." Black's Law Dictionary, 580 (6th edition, 1990) (citation omitted). The decision to limit the scope of the justification, which would exculpate the defendant from criminal liability on the day of incident, undisputedly makes the crime "greater [today] than it was when committed." *Kalck, supra.*

The courts of this Commonwealth are the sentinels charged with the responsibility of protecting our citizens from such violations of their constitutional rights; we should not be the originator of the violation.

WIEAND, Judge, dissenting, in support of reversal.

I agree with the majority and, therefore, join its holding that a criminal defendant who uses justifiable force in defending himself against an assailant may nevertheless be held criminally liable for injuries inflicted on an innocent bystander if the defendant acts recklessly or in a criminally negligent manner. I am unable to agree, however, that the Commonwealth showed prima facie recklessness or criminal negligence under the circumstances of this case.

When Fowlin entered the Easton nightclub during the early morning hours, he was approached by three men. These men were known to appellant because they had had a prior confrontation. One of the men displayed a handgun, and another sprayed pepper gas into his face and eyes. While partially blinded, Fowlin drew his own gun and fired a series of shots from left to right in self-defense. An innocent bystander was struck by one of these shots.

It may be that appellant's conduct was tortious as to the bystander. Under the emergency circumstances of this case, however, I find no basis for concluding that appellant's conduct was reckless or criminally negligent. Therefore, I would reverse the order of the trial court and dismiss the charges of

aggravated assault and recklessly endangering another person which were filed against appellant.

McEWEN and BECK, JJ. join this statement.